## 28449. EMMETT v. THE STATE.

UNDERCOFLER, Justice.

George Herman Emmett was convicted on two counts of felony murder arising from the deaths of Dr. Warren B. Matthews and his wife, Dr. Rozina Matthews. He was sentenced to two consecutive terms of life imprisonment. The appeal is from these convictions. *Held:*

1. (a) The appellant contends that the court erred in not striking all the testimony of Larry Wade Truitt because he refused to answer certain questions on cross examination on the ground that the answers might tend to incriminate him.

The witness testified that a prior conspiracy to burglarize the Drs. Matthews' home had been planned by George Emmett, Charles Benjamin Roberts, James Edward Creamer and him. On cross examination the witness was asked if he knew Billy Jenkins and whether he had any conversation with him about the Drs. Matthews' home. The witness testified that he knew Billy Jenkins but refused to answer the remainder of the question on the ground that it might incriminate him. The appellant contended in the trial court that he wanted to cross examine Truitt about a conversation he had previously had with Billy Jenkins about the Matthews' house in December, 1970, and whether Jenkins had told him in December, January or February about the Matthews' house. The witness refused to answer the

question and stated that he was with Emmett, Roberts and Creamer and went with them to the Matthews' house in December, 1970, but "that he was not with Billy Jenkins that night, and I wasn't with Bill Jenkins, if he participated in it, which I am not saying he did, I wasn't with him, I was in jail." He also testified that he did not go to the Matthews' house with Billy Jenkins. The appellant moved that all of the testimony of the witness be stricken from the record and that the jury be instructed to disregard it in its entirety. The motion was overruled by the court.

In *Smith v. State,* 225 Ga. 328 (7) (168 SE2d 587) this court said: "No Georgia case has been found which clearly and explicitly lays down the rule which we deem to be the correct rule on this issue. However, there are a number of decisions by circuit courts of appeals which clearly recognize and enunciate the rule which we deem to be implicit in the cases decided in this State. In United States v. Cardillo, 316 F2d 606, the court said: 'Since the right to cross examine is guaranteed by the Constitution, a federal conviction will be reversed if the cross examination of government witnesses has been unreasonably limited. E.g., Alford v. United States, supra; United States v. Masino, 2 Cir. 1960, 275 F2d 129; United States v. Lester, 2 Cir. 1957, 248 F2d 239. However, reversal need not result from every limitation of permissible cross examination and a witness's testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be

used against him. United States v. Kravitz, 3 Cir. 1960, 281 F2d 581; Hamer v. United States, 9 Cir. 1958, 259 F2d 274; United States v. Toner, 3 Cir. 1949, 173 F2d 140. On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part. Montgomery v. United States, 5 Cir. 1953, 203 F2d 887.' That case has been followed in a number of more recent cases including Smith v. United States (CCA 8) 331 F2d 265, and Coil v. United States (CCA 8) 343 F2d 573."

In the *Smith* case, 225 Ga. 328, supra, p. 331, it is stated that the witness' claim of privilege against self-incrimination was with respect to matters sought to be elicited on cross examination which were wholly collateral to and unrelated to her testimony in chief, and was with respect to separate transactions, in no way shown by her testimony to be connected with the crime with which the defendant was charged.

Under the ruling made in the *Smith* case, the trial court did not err in overruling the motion to strike all the testimony of this witness because the name of Billy Jenkins had not been brought out of direct examination of the witness.

(b) The appellant also argues that Truitt had been promised immunity from prosecution and this should have been made known to the jury.

Truitt was in a federal prison in the State of Washington on another offense at the time of the Matthews murders. He testified before the jury that he never asked the state for immunity from prosecution and "I just assumed that they wouldn't." The district attorney stated to this court that he had been willing at any time to grant written immunity to Truitt and that this had been understood.

Under these circumstances we conclude that the jury was aware that Truitt would not be prosecuted and no harm to the appellant resulted.

2. (a) The appellant contends that the trial court erred in overruling his motion to interview Debra Ann

Kidd, the sole eyewitness to the two murders, who testified in the case and who was in protective custody of the police department.

The appellant contends that the district attorney had advised the witness not to discuss the case with counsel but the record shows that during an in camera hearing in the presence of the judge, his court reporter and secretary, the witness informed the trial judge that she did not want to discuss the case with appellant's counsel until the day of the trial, that the decision was hers and was made freely and voluntarily without instructions from anyone.

In 23 CJS 817, § 958, it is stated: "Accused and his counsel have the right to interview witnesses before the trial; and the state has no right to deny them access to a witness material to the defense, but a witness cannot be compelled to submit to such interview." Also see *Wilson v. State,* 93 Ga. App. 229 (91 SE2d 201).

We also note that Debra Ann Kidd was fully interrogated by counsel at a habeas corpus hearing of the appellant and that the trial court told counsel that he would require them to be present at the prior trial of co-indictee Creamer when Debra Ann Kidd testified. Counsel was present at that time.

There is no merit in this contention of the appellant.

(b) The appellant moved to interview Mary Ann Morphus, one of the co-indictees in the murders. Her attorney stated that she had no intention to discuss the case with them. On the first day of the trial, counsel for the appellant renewed his motion to interview this witness. His motion was granted by the trial court. The trial lasted one week and during the week the witness testified on direct and cross examination. When the witness was called on rebuttal, the appellant moved to strike her testimony and contended for the first time that the state intentionally secreted her to prevent an interview and thereby suppress evidence.

In overruling the motion that the witness' testimony be stricken, the trial court stated that he had exercised his discretion in granting an interview with the witness over her objections, that counsel for the appellant was present during the examination of the witness in a co-

indictee's trial, that counsel had not informed the court that he was having difficulty in finding the witness for an interview, and because the motion was to strike and not to continue the case.

We also note that Mary Ann Morphus was fully cross examined by counsel for Creamer during his trial and that the trial court required counsel for the appellant to be present during the trial and they were.

We find no merit in this contention of the appellant.

3. Appellant contends and argues together that, "The trial court erred in prohibiting the defendant's cross examination of State's critical witness, Debra Ann Kidd, regarding her prior account of the crime made to Edwin P. Hall, while under the influence of hypnosis," and that, "The trial court erred in refusing to conduct an in camera inspection of tape recordings of Debra Ann Kidd's early narrative of the events of the crime made to hypnotist Hall while he was acting solely as an investigatory arm of the Cobb County Police Department."

Debra Ann Kidd, who had been granted immunity from prosecution, was the state's principal witness and the only eyewitness to testify. She stated she was present during the commission of the crimes. She identified the participants and related her association with them. She described in detail the circumstances and events leadings up to, during and following the crime. Among other things she admitted that, under the compulsion of James Edward Creamer, a co-conspirator, she had shot Dr. Rozina Matthews in the head while she was lying on the ground, which shot was described as a "coup de grace" and resulted in Dr. Matthews' death.

The crimes were committed on May 7, 1971. Information concerning Debra Ann Kidd's participation therein came to the attention of Cobb County authorities in July, 1972. She was brought to Cobb County in August, 1972, and remained in protective custody thereafter. She related to Cobb County authorities the principal facts and details of the crimes. Thereafter, on August 30, 1972, Debra Ann Kidd first visited Edwin P. Hall, a licensed psychologist who employs hypnotism in the practice of his profession. Prior to this trial in March, 1973, Debra Ann Kidd had visited Hall on twelve occasions for a total

of approximately thirty-five hours. Ten to fourteen hours of the sessions had been taped. As stated by Debra Ann Kidd, the purpose of these visits was to have Hall place her under hypnosis and by "age digression" (sic) help her remember more of the details of the crime which she could not remember because of the time lapse and her use of amphetamine type drugs.

The trial court restricted the defendant's cross examination of Debra Ann Kidd's hypnotic sessions with Hall and refused to make an in camera inspection of the tapes because the psychologist-patient relationship is confidential and protected under Code Ann. § 84-3118.

Appellant contends that the trial court erred when it,". . . restricted the cross examination of Kidd and refused to make an in camera inspection of the tapes and recordings made by Hypnotist Hall of his hypnotic seances with Kidd concerning her revelation of the crime . . ." because they were not for the purpose of treatment, they were not confidential, or if confidential, such relationship was subsequently waived. Appellant contends further that he is entitled to any material evidence which is favorable to his defense or of an exculpatory nature under Brady v. Maryland, 373 U.S. 83 (83 SC 1194, 10 LE2d 215).

Appellant argues that a confidential relationship between Kidd and Hall does not exist under the facts of this case. However, we do not reach this issue. We conclude that the reliability of hypnosis has not been established and statements made while the witness was in a trance are inadmissible. IIIA Wigmore on Evidence 937, § 998 and cits. Contra, People v. Modesto, 59 Cal. 2d 722 (382 P2d 33, 31 Cal. Rptr. 225).

Debra Ann Kidd testified at length and in detail. She was cross examined extensively and thoroughly. It does not appear which details she may have remembered after her hypnotic sessions. It is clear from all the evidence, however, that she related to Cobb County officers the principal facts and details of the crime before her hypnotic sessions.

For these reasons we also conclude that the trial court did not err in refusing to make an in camera inspection of the tapes of the hypnotic sessions.

4. The appellant contends that the trial court erred in failing to charge the jury on two specific requests to charge. We have carefully reviewed the requests to charge and find that they are fully covered in the court's charge. *Brown v. State,* 201 Ga. 751 (2) (41 SE2d 156). There is no merit in this contention.

5. The appellant contends that the trial court erred in overruling his motion to require the state to purge its list of over five hundred witnesses of the names of those persons who would not testify in the case. He contends that the failure to do so amounts to the denial of the effective assistance of counsel in the preparation of his defense as guaranteed to him by the Sixth Amendment to the Federal Constitution (Code § 1-806) and that it deprived him of due process of law under the Fifth and Fourteenth Amendments to the Federal Constitution (Code §§ 1-805, 1-815). Before the trial court ruled on this motion, the state voluntarily reduced the number of witnesses which might be called on direct examination to forty by placing a check mark beside the names which would be called. The trial court then overruled the motion to purge the list of witnesses. Furthermore, the record also shows that the trial court required counsel for the appellant to be present during the trial of a co-indictee, James Creamer, which was held 3 weeks prior to the trial of this appellant. No witnesses testified at the appellant's trial other than the ones who testified at the Creamer trial.

The contention of the appellant is without merit.

6. The appellant contends that the court erred in not allowing the introduction in evidence under the business record Act (Ga. L. 1952, p. 177; 1958, pp. 542, 543; Code Ann. § 38-711), a credit information form which was properly authenticated and which would have successfully corroborated the testimony of Carol Sue Bowling Johnson.

The record shows that the resident manager of an apartment house testified that certain credit information was given to her when a certain apartment was rented. Parts of the credit information record were objected to as being hearsay evidence by the state and the credit information form as a whole was not allowed in evidence.

Hearsay evidence which is a part of business records, is not admissible in evidence. *Wesley v. State,* 225 Ga. 22 (2) (165 SE2d 719); *Martin v. Baldwin,* 215 Ga. 293 (110 SE2d 344); *Calhoun v. Chappell,* 117 Ga. App. 865 (2) (162 SE2d 300).

This contention of the appellant is without merit.

7. The appellant contends that the trial court erred in overruling his amended motion for new trial based upon newly discovered evidence of a totally exculpatory nature.

(a) The appellant contends that the state's witness Debra Ann Kidd was in Greenville, South Carolina on May 7, 1971, when she testified that she participated in the Matthews murders. He contends that she signed a jurat to a divorce petition on that date in Greenville and that she also then and there received and endorsed a check from her guardian.

In *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357) it is stated: "'It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' *Burge v. State,* 133 Ga. 431, 432 (66 SE 243)."

The trial court made detailed findings of fact in overruling the amended motion for new trial. His findings show that the Cobb County Grand Jury returned 4-count murder indictments against James Edward Creamer, George Herman Emmett, Billy Richard Jenkins, Hoyt Powell, Wayne Ruff, Larry Hacker, Mary Ann Morphus, Carol Sue Johnson and Charles Benjamin Roberts charging them with the Matthews murders. James Edward Creamer was placed on trial first on January 29, 1973, and Richard "Dick" James, a member of the South Carolina bar was one of his three lawyers; that George Herman Emmett was placed on trial on

February 26, 1973. After the trials of Creamer and Emmett but prior to the trial of Hacker, et al., defense counsel for Creamer and Emmett made disclosures of evidence of a jurat dated May 7, 1971, signed by Debra Ann Kidd Rumbler as part of a divorce petition in the Court of Common Pleas, Greenville, South Carolina, along with a series of checks payable to Debra Ann Kidd Rumbler by her guardian and one of the checks was dated May 7, 1971, and purportedly endorsed by her. Richard "Dick" James, one of the Creamer's attorneys, served as referee in entering the Kidd divorce decree in 1972. Debra Ann Kidd in an affidavit swore that she had signed the jurat for the divorce proceedings in April 1971, that it was common practice for her to receive several post dated checks from her guardian for which, after endorsement, she received cash. These facts were corroborated during the Hacker, et al., trial by her brother, David Kidd.

On May 6, 1971, Debra Ann Kidd went to a pharmacy in DeKalb County, Georgia, to get some make-up to cover two black eyes which James Creamer had inflicted on her during a fight. She was identified by the saleslady. Debra Ann Kidd testified that she and three of the men co-indictees passed by the Matthews' house in a car on the morning of May 7, 1971, and engaged in a short conversation with Mrs. Judy Fox. Mrs. Fox testified that she talked with Debra Ann Kidd about 10:30 a.m. on that date when Kidd and her companions called her over to their car and asked her what had happened at the Matthews' house. When Mrs. Fox told them that two doctors had been murdered, they burst into laughter. Attorney Richard "Dick" James had previously represented other co-indictees extensively. Attorney James did not testify why he did not or could not have discovered the jurat date May 7, 1971, with due diligence. The trial court held that counsel did not satisfy him that they did not have these facts before the Creamer and Emmett trials; that testimony pertaining to the pendency of the divorce proceeding was elicited on the trial of Creamer; that Attorney James had full knowledge of the entire proceedings and was on the list of witnesses furnished the co-indictees; that during the Creamer trial

evidence was presented that Kidd was a minor, that she had recovered damages as a result of a lawsuit which were matters of public record in Greenville; that the fact that a divorce suit had been filed was not newly discovered evidence but only the date of the jurat thereto had any significance; that a different result would not likely occur in a new trial (which was substantiated by the fact that during the Hacker, et al., trials all of the "newly discovered evidence" was introduced, the witnesses testified on direct and cross examination, and all of the defendants in that case were convicted by the jury); that the evidence was cumulative only; that Attorney James did not submit an affidavit explaining why the documentary evidence presented was not produced during the Creamer and Emmett trials; and that since Kidd was not the only witness for the state the evidence would only impeach her credit. *Arwood v. State,* 59 Ga. 391; *Aycock v. State,* 188 Ga. 550, 565 (4 SE2d 221); *Veasey v. State,* 216 Ga. 775, 778 (119 SE2d 346).

"Where the showing as to diligence in reference to newly discovered evidence is not satisfactory, the discretion of the trial judge in refusing to grant a new trial will not be controlled." *Atkins v. State,* 228 Ga. 578 (4) (187 SE2d 132).

This contention of the appellant is without merit.

(b) The appellant contends that on July 13, 1973, he received copies of statements made by Janice Sue White and George Ledat which showed that appellant was innocent of the Matthews murders. These statements are to the effect that another person had admitted to them that he committed the offenses.

In *Herrin v. State,* 230 Ga. 476, 478 (197 SE2d 734) this court stated: "The requirements as stated in *Bell* [227 Ga. 800, 805] supra, as well as *Burge v. State,* 133 Ga. 431 (66 SE 243), and *Berry v. State,* 10 Ga. 511, are necessarily for application to *admissible* newly discovered evidence. 'Newly discovered evidence that another person has admitted that he and certain others committed the offense is no cause for a new trial, inasmuch as the admissions would not be competent evidence in behalf of the accused were a new trial ordered. *Kelly v. State,* 82 Ga. 441 (9 SE 171), and cases

cited. *Briscoe v. State,* 95 Ga. 496 (20 SE 211). And see *Rawlins v. State,* 126 Ga. 96, 99 (54 SE 924); *Attaway v. State,* 56 Ga. 363 (2). *Johnson v. State,* 158 Ga. 192, 201 (123 SE 120)."

Since the statements mady by White and Ledat are inadmissible hearsay evidence, this contention of the appellant is without merit.

The appellant's further contention that the statements of White and Lebat were illegally suppressed and deprived him of due process of law are also without merit.

8. The appellant contends that he was systematically denied a fair and impartial trial under the Sixth Amendment to the U. S. Constitution because of certain actions of the state and the various rulings of the court.

(a) The appellant contends that the district attorney emeritus made certain improper remarks during the trial. On motion of defense counsel, the trial court reprimanded the district attorney emeritus and no reversible error is demonstrated.

(b) The appellant contends that the state used "religious convictions" to bolster the testimony of Debra Ann Kidd.

The record shows that in his opening statement, the district attorney emeritus told the jury of the theory of conspiracy and told them that Debra Ann Kidd was the only eyewitness to the murders who would testify for the state, that Kidd came from a very poor background, of a very low social class, that she had formerly been a prostitute, had posed for nude photographs, that she had lived with Creamer, Emmett and a Cobb County policeman, and that "something — some call it fear, some call it conscience, and some call it salvation, has touched her heart and made her come forth and tell the awful story that happened on May 7, 1971." There was no objection to this.

During the trial, Kidd stated that she was living with a lady in Cobb County and thanks to her and Nelson Price that she no longer used drugs, that Price was the pastor of the Baptist church and, "He has been working with me, and thanks to him, I am now able to— he shared

his knowledge of Christ with me. . ." Objection was made to this testimony and it was sustained. Later she was asked by the district attorney emeritus, "And have you been listening to the Rev. Price on . . ." Objection was made to the question and the court in effect sustained the objection. The appellant also contends that Rev. Price was in the courtroom during the trial and that the jury was further prejudiced because a church bus was used to transport the jury as a group to and from the courthouse. When objection was made to the use of the bus, the trial court had the name of the bus covered.

The trial court has a wide discretion in the handling of a trial and we find no error in any of the complained of matters. *Mobley v. State,* 221 Ga. 716 (4) (146 SE2d 735).

(c) The appellant contends that efforts were made to present to the jury those proceedings which occurred outside the scope of the trial and outside the presence of the jury. The appellant contends that this was done by the district attorney emeritus after the evening recess when a statement was made that a contract had been let on Kidd's life, that the contract price had been increased, and that the jury was aware of a bomb threat.

The trial court held a hearing outside the presence of the jury on the contentions of the appellant. The district attorney emeritus stated at the hearing that after the jury had left the courtroom and while he was still inside the bar of the court talking with Kidd and the officer who had her in protective custody that he told them to be very careful in going back to the jail because the contract on her life had been increased from $10,000 to $15,000. The newspaper reporter who publicized the statement admitted to the court that he was eavesdropping and that the complained of remarks were made to those persons responsible for the witness' safety and to her. In addition to this, during the trial the courtroom had to be cleared because of a bomb threat, and the district attorney emeritus testified that two cars had followed the car in which Kidd, a police officer and himself were riding, that he had been informed that one of the friends of the appellant had a bazooka, and by running red lights, they managed to evade the cars pursuing them.

Over objection of the appellant, the trial court later questioned the jury and found that they had not been prejudiced by any outside matters and were unaware of any outside occurrences. We find no error.

(d) The appellant contends that the state intentionally suppressed material exculpatory evidence and when he learned during the trial of the evidence, he moved for its production.

The record shows that two registration cards were in the police files which showed that a Neville Oden (an alias used by Creamer) registered at a certain motel in DeKalb County. The trial court stated that when he made an in camera inspection of the district attorney's files, these cards were not in that file. When evidence was elicited during the trial about the cards, the police files were searched and they were found. The cards were furnished to the appellant and he had them during the trial. There was no evidence that the cards were intentionally suppressed and since the evidence was available to the appellant during his trial, the rulings made in Brady v. Maryland, 373 U.S. 83 (83 SC 1194, 10 LE2d 215) do not apply.

(e) The appellant contends that he had a legal right to confer with his witness privately during a court recess when her testimony had been interrupted. The trial court, on objection by the state, refused to allow the conference because the witness had already testified and under the rules laid down for the trial of the case all of the witnesses in the case were not to discuss any matter after they had appeared and testified either with counsel, parties or other witnesses.

The trial court has the right under Code § 24-104 (4), "To control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereof."

The trial court did not abuse this power by refusing the request of the appellant.

(f) The appellant contends that the arrest outside the presence of the jury of a defense witness was a part of a general plan to intimidate the defense witnesses and deprive the appellant of a fair trial.

At a hearing outside the presence of the jury, the district attorney emeritus stated that the witness had been inadvertently released from custody because some outstanding hold orders for robbery from Alabama had been found. He stated he had told the detective division that when the witness came back to testify at this trial that she would be taken into custody to answer the Alabama charges. After a conference, the trial court allowed the witness to be released under her previous bond which was ordered to serve as a bond for her appearance at any rendition warrant entered by the Governor on any extradition proceeding.

In view of these circumstances no harm occurred to the appellant.

9. The appellant contends that his motion for a directed verdict of not guilty should have been granted since he contends the only evidence produced by the state linking the appellant with the crime was the testimony of Debra Kidd, an alleged accomplice, without any proof of corroborating circumstances independently connecting him with the crime.

We conclude from a review of the entire record that the verdicts are supported by the evidence and that the testimony of the alleged accomplice was sufficiently corroborated.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 16, 1974 — DECIDED APRIL 4, 1974 — REHEARING DENIED APRIL 23, 1974.

*Moulton & Carriere, E. Wayne Moulton, Edward E. Carriere, Jr., Cook & Palmour, Bobby Lee Cook, W. Benjamin Ballenger,* for appellant.

*George W. Darden, District Attorney, Richard L. Moore,* for appellee.