32500. CAMPBELL v. THE STATE.

MARSHALL, Justice.

The appellant was convicted of armed robbery and murder in the Madison Superior Court. He received a life imprisonment sentence for the armed robbery conviction and a death sentence for the murder conviction. His case is here on direct appeal and for mandatory review of the death sentence imposed.

I. Summary of the Evidence.

On December 5, 1975, Mr. C. E. Eberhart, age 74, was slain in his barbershop in Colbert, Georgia. The violent and brutal nature of the struggle which ended in

---

his death was evidenced by "blood smeared all over the whole barbershop and everything in the barbershop..." A blood-stained claw hammer was also found in a truck located a few feet from the building in which the barbershop was housed.

The appellant was seen loitering in the vicinity of the barbershop at approximately 5 p.m. Approximately one-half hour later, the appellant was seen walking toward the barbershop.

The victim's blood was found to be type O and the appellant's was type A. Traces of type A blood were found splattered on the hammer and both inside and outside the barbershop.

The appellant was subsequently arrested in Virginia. At the time of his arrest he had a deep cut on the top of his head. He was wearing a watch with a black plastic band identified at trial by the victim's daughter as the band she had earlier given to her father. She identified a watch found in the appellant's residence in Madison, Georgia, as the watch she had given her father. Blood stains were found on the watch. Also taken in the robbery was $300 in cash.

After being advised of his constitutional rights, the appellant gave a statement to police before being returned to Georgia. In that statement, he admitted going from Madison to Colbert with Henry Drake (co-defendant) and Mary Carruth on the day of the crime. He also admitted going to Mr. Eberhart's barbershop. However, he stated that he left the barbershop and went to the laundromat where his two companions picked him up. The appellant maintained that Henry Drake was "wearing a light colored watch with a dark colored band." The appellant asked Drake where he got the watch and Drake responded that he had bought it.

The appellant gave another statement to police which alleged that as he was getting into Henry Drake's car in front of the barbershop, he picked up a hammer with blood on it and threw it down. The appellant gave another statement en route from Virginia to Georgia that, "You know when a fellow gets to drinking ... I didn't mean to do it."

Mary Carruth testified at trial that the appellant

had stated to her after they left Colbert on the day of the crime that he thought he had killed a man.

The appellant gave testimony at trial incorporating aspects of each of his prior statements to police. He testified that he and Henry Drake had been drinking on the trip to Colbert. In Colbert, he went to the laundromat, then to the barbershop. He was joined in the barbershop by Drake, who hit the barber over the head with a hammer. Drake then hit him (the appellant) over the head with the hammer and knocked him out. When he regained consciousness, he was propped up in front of the entrance to the barbershop. Drake drove the car around and instructed the appellant to get in. The appellant got into the car, picked up the hammer lying inside, and threw it out.

The victim remained in a comatose state from the date of the attack until approximately 3 1/2 months later, when he died. He had received a stab wound in his chest and multiple lacerations to his scalp, causing severe swelling to his face and head.

II. Enumerations of Error.

1. The appellant's first enumeration of error contends that the trial judge erred in overruling his motion for new trial on the general grounds.

After the jury has returned a verdict of guilty, and the defendant seeks a reversal of his conviction on appeal by arguing that the trial judge erred in denying his motion for new trial on the general grounds, the only question presenting itself to the appellate court is whether there is any evidence to support the verdict. See *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975). See also *Ridley v. State,* 236 Ga. 147 (223 SE2d 131) (1976).

The appellant specifically argues that his conviction was obtained on purely circumstantial evidence except for the testimony of a witness (Mary Carruth) who was successfully impeached. This argument overlooks the appellant's pre-trial statements, including a confession, which were admitted in evidence. A confession is direct evidence. See *Ramsey v. State,* 212 Ga. 381 (2) (92 SE2d 866) (1956).

In any event, the jury was accurately instructed on the law of circumstantial evidence under Code § 38-109.

By its verdict, the jury has found that the evidence at trial excluded every other reasonable hypothesis save that of guilt. From the evidence at trial, there appeared no hypothesis other than guilt which this court could hold reasonable as a matter of law. See *Harris v. State,* 236 Ga. 242 (1) (223 SE2d 643) (1976).

The evidence at trial was sufficient to support the verdicts. This enumeration of error on the general grounds is consequently without merit.

2. The second enumeration of error contends that the trial judge erred in overruling the appellant's plea in abatement challenging the composition of the grand jury which indicted him.

Although the appellant alleged in his plea that certain classes of people had been systematically excluded from the grand jury list, he presented no evidence in support of this allegation. Since it is clear that the defendant has the burden of establishing a prima facie case of jury discrimination (see, e.g., *Pass v. Caldwell,* 231 Ga. 192 (200 SE2d 720) (1973) and *Payne v. State,* 233 Ga. 294 (210 SE2d 775) (1974)), the trial judge did not err in overruling the plea.

3. The third enumeration of error contends that the trial judge erred in overruling the appellant's special plea of insanity. The appellant also argues in his seventh enumeration of error that he was entitled to the appointment of an expert to examine him in order to determine his mental capacity.

By agreement of the parties, the hearing on the special plea of insanity was conducted before the judge sitting without a jury. The appellant presented no evidence at the hearing to support his contention that he was insane at that time or incompetent to stand trial. The trial judge did not, therefore, err in overruling his special plea. See *Williams v. State,* 238 Ga. 298 (3) (232 SE2d 535) (1977). Nor did the trial judge abuse his discretion in denying the appellant's motion for appointment of an expert medical witness. See *Taylor v. State,* 229 Ga. 536 (1) (192 SE2d 249) (1972) and cits. See also *Patterson v. State,* 239 Ga. 409 (1977). Enumeration of error 3 is without merit.

4. The fourth enumeration of error contends that the

trial judge erred in denying the appellant's motion for a continuance to allow further time for trial preparation.

Considering both the length of time prior to trial that the appellant's trial counsel had been appointed to represent him, as well as the amount of time in which counsel had an opportunity to consult with the appellant, we cannot say that the court's denial of the motion for a continuance was an abuse of discretion. Code § 81-1419. See, e.g., *Marshall v. State,* 239 Ga. 101 (236 SE2d 58) (1977); *Fleming v. State,* 236 Ga. 434 (224 SE2d 15) (1976). Enumeration of error 4 is without merit.

5. The fifth enumeration of error contends that the trial judge erred in failing to sustain the appellant's challenge to the array of the traverse jury. At trial the only evidence adduced by the appellant in support of his jury challenge was the disparity between the number of men and women on the traverse jury panel *in this case.*

There is no constitutional guarantee that the grand or petit juries, impanelled in a particular case will constitute a representative cross-section of the entire community. "A defendant is not constitutionally entitled to a venire or jury roll of any particular composition . . . Taylor v. Louisiana, 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975) . . . [Cits.]" *Sanders v. State,* 235 Ga. 425, 429 (219 SE2d 768) (1975). What the Constitution does require is "that the state not deliberately and systematically exclude identifiable and distinct groups from their jury lists." *Sanders,* supra, at 429.

To establish a prima facie case of jury discrimination the complainant must show "that an opportunity for discrimination existed from the source of the jury list and that use of the infected source produced a significant disparity between the percentages found present in the source and those actually appearing on the grand and traverse jury panels." *Fouts v. State,* 240 Ga. 39, 41 (1977).

The appellant failed to make out a prima facie case of jury discrimination. Therefore, the trial court did not err in refusing to sustain the challenge.

6. The sixth enumeration of error contends that the trial judge erred in refusing to sustain the appellant's motion for a change of venue due to prejudicial pre-trial

publicity.

None of the jurors testified on voir dire that they had formed fixed opinions as to the guilt or innocence of the accused from pre-trial publicity. Furthermore, of the seven newspaper clippings introduced by the appellant in support of his motion, six were published eight months before trial and one was published five months before trial.

The trial judge did not abuse his discretion in denying the appellant's motion for change of venue. See *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Wilkes v. State,* 238 Ga. 57 (230 SE2d 867) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Krist v. Caldwell,* 230 Ga. 536 (198 SE2d 161) (1973).

7. The appellant's eleventh enumeration of error contends that the trial judge erred in allowing the district attorney to argue law to the jury.

It appears from the transcript that the district attorney was requesting jury instructions from the court in the presence of the jury, which is permissible under numerous decisions of this court. See, e.g., *Tucker v. State,* 237 Ga. 740 (229 SE2d 749) (1976); *Wilson v. State,* 223 Ga. 531 (156 SE2d 446) (1967); *Jackson v. State,* 219 Ga. 819 (136 SE2d 375) (1964); *Ayers v. State,* 215 Ga. 325 (110 SE2d 669) (1959). This enumeration of error is without merit.

8. The twelfth enumeration of error contends that the trial court erred in allowing the district attorney to comment on the appellant's failure to call co-defendant Drake (whose trial was severed from the appellant's) as a witness.

The complained-of remarks by the district attorney merely informed the jury that Henry Drake had not been called as a witness by either side and that no adverse inferences should be drawn. The appellant raised no objection at trial to this argument which he now alleges was improper. The failure to object below constitutes a waiver, and the appellant cannot now complain on appeal. See *Johnson v. State,* 226 Ga. 511 (5) (175 SE2d 840) (1970). The twelfth enumeration of error is without merit.

9. Although not supported by argument or citation of authority as required by Rule 8 (c) (2) of this court, the

remaining enumerations of error have been reviewed and found to be without merit.

### III. Sentence Review.

1. We find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Code Ann. § 27-2537 (c) (1) (Ga. L. 1973, pp. 159, 165).

2. (a) The jury's finding that the offense of murder was committed while the offender was engaged in the commission of an additional capital felony, to wit, armed robbery (Code Ann. § 27-2534.1 (b) (2); Ga. L. 1973, pp. 159, 163), is supported by the evidence.

(b) The jury's finding that the offense of murder was outrageously and wantonly vile, horrible or inhuman in that it involved torture to the victim or depravity of mind on the part of the defendant (Code Ann. § 27-2534.1, supra, (b) (7)), is supported by the evidence. The evidence shows that the appellant mercilessly bludgeoned an elderly man, eventually to his death, with a claw hammer. This offense was outrageously and wantonly vile in that it involved both torture to the victim and depravity of mind on the part of the defendant.

3. In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder. We find that the similar cases listed in the appendix support affirmance of the death penalty in this case. The appellant's sentence to death is not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537, supra, (c) (3).

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 12, 1977 — DECIDED NOVEMBER 28, 1977 — REHEARING DENIED DECEMBER 15, 1977.

*Rodger E. Davison, Floyd W. Keeble, Jr.,* for appellant.

*William Bryant Huff, Clete D. Johnson, District Attorneys, Dawson Jackson, Assistant District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Staff*

*Assistant Attorney General,* for appellee.

APPENDIX.

*Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Birt v. State,* 238 Ga. 402 (233 SE2d 362) (1976); *Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1977); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977).