33463. DRAKE v. THE STATE.

HALL, Justice.

Henry Arthur Drake was convicted of the murder and armed robbery of C. E. Eberhart, and sentenced to death for the murder, and to life imprisonment for the armed robbery. This is the direct appeal of these convictions, and the death sentence.

Prior to this trial William Campbell was also convicted of the murder of C. E. Eberhart, and was sentenced to death for the murder, and to life im-

prisonment for the armed robbery. The convictions and death sentence of Campbell were affirmed in *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977). The evidence in Drake's trial was essentially the same as that in Campbell's trial.

In the instant case Campbell reluctantly testified against Drake. Campbell had lived with Drake and Mary Caruth in Caruth's house after he and Drake were released from prison, where they met. The three drove to Colbert in the late afternoon of the day of the offenses, where Campbell got out in front of the victim's barbershop, and proceeded to get a haircut. According to Campbell's testimony, Drake entered the barbershop wearing a black wig while Campbell was still in the barber's chair. Drake was carrying a claw hammer, and struck the victim with it. Campbell protested, telling Drake not to hit "the old man," at which point Drake struck Campbell with the hammer. Drake continued to struggle with the victim until Eberhart passed out from the blows to his head. The victim was also stabbed.

Eberhart died several months later from the head wounds. Approximately three hundred dollars was stolen.

The state's case rested largely on Campbell's testimony, since there was no other direct evidence, and little circumstantial evidence of Drake's participation in the crime. Campbell's testimony was impeached by proof of prior inconsistent statements and prior felony convictions. The testimony was corroborated in a variety of particulars by Mary Caruth's testimony, Drake's own testimony, and some physical evidence, including a knife found at the scene which matched the description of a knife belonging to Drake.

The victim was over 70 years old, but he was healthy and there was evidence of a tremendous struggle in the barbershop. Campbell was in his sixties, and suffered so severely from asthma and emphysema that he could not exert himself strenuously. Drake, on the other hand, was healthy and in his thirties. From this the state argued that Drake must have been the one who actually beat the victim.

Mary Caruth's testimony in general supported

Drake's alibi defense that he was at his mother's house in Colbert at the time of the offense. However, Caruth's testimony was impeached by prior inconsistent statements. Drake and his mother also testified in support of his alibi.

1. The denial of a new trial by the trial court on the grounds that the verdict of the jury was contrary to evidence and the principles of justice and equity, Code § 70-202; and that the verdict was decidedly and strongly against the weight of the evidence, although there may appear to be slight evidence in favor of the verdict, Code § 70-206, is enumerated as error. We do not have the discretion to grant a new trial on these grounds; we can only review the evidence to determine if there is any evidence to support the verdict. *Campbell v. State*, supra.

In determining whether there is any evidence to support the verdict we resolve all conflict in the evidence to favor the verdict. *Eubanks v. State*, 240 Ga. 544, 546 (242 SE2d 41) (1978). The credibility of Campbell's testimony was for the jury to decide. Code § 38-1805. This testimony was ample to support the denial of a new trial. *Campbell v. State*, supra, at 355.

2. Appellant also contends that his conviction rested entirely on circumstantial evidence which did not exclude every other reasonable hypothesis except that of guilt. Code § 38-109. We disagree. Campbell's testimony was direct evidence of Drake's guilt.

3. A third related contention is that there was no corroboration of Campbell's testimony, and since he was an accomplice, appellant's conviction was barred by Code § 38-121. We first note that there is no dispute that Campbell was an accomplice under the state's theory of the case, and that there was evidence to support this position.

Appellant does not argue that there was insufficient general corroboration of Campbell's testimony. Rather, he argues the second test, i.e., whether there was "independent corroborating evidence which tends to connect the *accused* with the crime." *West v. State*, 232 Ga. 861, 865 (209 SE2d 195) (1974); *Birt v. State*, 236 Ga. 815, 825 (225 SE2d 248) (1976). The test is whether the testimony of the accomplice was corroborated by "facts or

circumstances which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that he is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt." *Price v. State,* 208 Ga. 695, 696 (69 SE2d 253) (1952); *Smith v. State,* 238 Ga. 640, 642 (235 SE2d 17) (1977).

The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime. *Williams v. State,* 222 Ga. 208, 220 (149 SE2d 449) (1966). Appellant was connected to the crime by the distinctive pocketknife found at the scene which matched the description of appellant's knife. In addition, it was established without dispute that appellant and Mary Caruth drove Campbell to the barbershop, drove him home with them after the robbery, and later drove him to Atlanta so that he could flee the state even though by that time Drake admittedly knew of Campbell's involvement in the crimes. This evidence was sufficient corroboration of Drake's involvement in the crimes. See *Birt v. State,* 236 Ga. at 825.

4. Appellant alleges that he was denied an impartial jury because of the relationship of a juror to the deceased. During the trial a juror learned for the first time (from his wife) that his wife's sister's husband was the victim's great uncle.[1] This information was made known to the court and counsel, but appellant's motion to strike the juror was denied when the juror stated that this relationship would not affect him in any way, and that he remained impartial. There was no evidence of any partiality, thus it was not error to deny the motion. The fact that appellant states he would have used a peremptory strike to remove the juror had the relationship been disclosed during voir dire does not change the fact that he had an impartial jury.

---

[1] Appellant does not contend the juror was disqualified under the relevant statutes. See Code §§ 59-716, 59-804 (4).

*Death Sentence Review*

The remaining enumerations of error are best covered in our review of the death sentence under Code § 27-2537 (c) (2).

5. Appellant complains that the argument of the district attorney in the penalty stage resulted in the imposition of the death penalty under the influence of passion, prejudice, and other arbitrary factors. More specifically, the prosecutor read dicta from cases, including *Eberhardt v. State,* 47 Ga. 598, 609 (1873). This practice was condemned in *Hawes v. State,* 240 Ga. 327, 336 (240 SE2d 833) (1977), when used for the purpose of persuading the jury to impose the death penalty, but as in *Campbell v. State,* supra, the prosecutor in this case was addressing not the jury but rather the court. We held in *Campbell* that the presence of the jury during such arguments did not bring the argument within the scope of *Hawes,* though it would be preferable if such arguments were conducted outside of the jury's presence. See also *Presnell v. State,* 241 Ga. 49, 62 (243 SE2d 496) (1978) (holding that such arguments may be harmless error).

Appellant also complains of a brief reference to Gary Gilmore[2] in the prosecutor's arguments. We agree that the reference was improper, but it too was made to the trial court. Moreover, this reference was not likely to inflame the passions or prejudices of the jury.

6. We find no error in the trial court's charge to the jury relating to the sentencing phase of the trial. The appellant's fourth and sixth enumerations of error are without merit. *Spivey v. State,* 241 Ga. 477 (1978).

7. After reviewing the entire record and transcript and considering the foregoing enumerations, we conclude that the sentence of death imposed on Henry Arthur Drake was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found the following statutory aggravating circumstances: (1) "The offense of murder was committed while the offender was engaged in the commission of an

---

[2] Gilmore was the first person executed in the United States since revised death penalty statutes were enacted.

additional capital felony, to-wit: the armed robbery of C. E. Eberhart." Code Ann. § 27-2534.1 (b) (2). (2) "The offense of murder was outrageously and wantonly vile, horrible, an[d] inhuman in that it involved torture to the victim or depravity of mind on the part of the defendant." Code Ann. § 27-2534.1 (b) (7). These statutory aggravating circumstances are supported by the evidence.

8. In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the similar cases listed in the appendix support affirmance of the death penalty.

Henry Drake's sentence to death for murder is not excessive or disproportionate considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3). The verdict is factually substantiated.

*Judgment affirmed.*[3] *All the Justices concur, except Hill, J., who also concurs, except that he does not concur in all that is said in Divisions 1 and 6 of the opinion.*

ARGUED MAY 9, 1978 — DECIDED JUNE 27, 1978 —
REHEARING DENIED JULY 20, 1978.

*Andrew J. Hill, Jr., Andrew J. Hill, III,* for appellant.

*Bryant Huff, District Attorney, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Assistant Attorney General,* for appellee.

---

[3] Including the cases decided today there have been 74 capital felony cases in which the death penalty was imposed and reviewed by this court pursuant to the Georgia Death Statute. 53 have been affirmed and 21 have been reversed by this court. With respect to race, the cases involved 31 defendants who were white and 43 who were black. Of the 21 cases reversed, 8 were white and 13 were black. 5 of the 53 affirmed cases were reversed by the Supreme Court of the United States.

APPENDIX.

*Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Birt v. State,* 238 Ga. 402 (233 SE2d 362) (1976); *Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1977); *Young v. State,* 239 Ga. 53 (236 SE2d 1) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977).