38034, 38272. DRAKE v. THE STATE (two cases).

GREGORY, Justice.

In case No. 38034 Henry Arthur Drake appeals from the denial of his extraordinary motion for new trial based on newly discovered evidence.

Drake was convicted of the armed robbery and murder of a Madison County barber. He was sentenced to death for the murder

and life imprisonment for the armed robbery. We affirmed his convictions on appeal. *Drake v. State,* 241 Ga. 583 (247 SE2d 57) (1978), cert. denied, 440 U. S. 928 (99 SC 1265, 59 LE2d 485) (1979).

Prior to Drake's trial, his co-indictee, William Campbell, was tried and convicted of the armed robbery and murder. Campbell was sentenced to life imprisonment for the armed robbery and death for the murder. Campbell's convictions were affirmed on appeal. See, *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977), cert. denied, 439 U. S. 882 (99 SC 219, 58 LE2d 194) (1978). At Campbell's trial, Campbell testified that he and Drake had been drinking prior to going to the victim's barber shop. Campbell maintained that over his protests, Drake had bludgeoned the barber with a claw hammer, then robbed him.

Campbell testified that, after striking the barber, Drake hit Campbell in the head with the hammer, then picked him up and placed him next to the door. Campbell testified that when Drake helped him up to leave, he noticed blood on the floor. The State introduced into evidence a small knife found at the scene of the crime which matched the description of a knife belonging to Drake. Campbell testified that he had never seen this knife before. The State presented evidence that there had been a struggle in the barber shop of a "violent and brutal nature." *Campbell,* supra, at 352. " '[B]lood [was] smeared all over the whole barbershop and everything in the barbershop.' " *Campbell,* at 353. The State also showed that, at the time of Campbell's arrest in Virginia, he was wearing the band to a watch which had belonged to the victim. The victim's watch was found at the residence Campbell and Drake shared. Drake did not testify at Campbell's trial.

At Drake's trial Campbell testified that, over his protests, Drake "struggle[d] with the victim until [the barber] passed out from the blows to his head." *Drake,* supra, at 584. The State also showed that "[t]he victim was over 70 years old, but he was healthy . . . Campbell was in his sixties, and suffered so severely from asthma and emphysema that he could not exert himself strenuously. Drake, on the other hand, was healthy and in his thirties. From this the state argued that Drake must have been the one who actually beat the victim." Ibid.

Drake maintained his innocence at trial. He testified that he was visiting his mother at the time of the offense. Drake's alibi was corroborated by Mary Caruth with whom Drake and Campbell lived. Drake's mother also testified that her son was with her at the time of the crime. There was undisputed evidence that Caruth and Drake drove Campbell to the barber shop, drove him to their home later in the afternoon, and then drove him to Atlanta so that "he could flee

the state even though by that time Drake admittedly knew of Campbell's involvement in the crimes." *Drake,* supra, at 586.

We noted, in reviewing Drake's convictions, that the "[S]tate's case rested largely on Campbell's testimony, since there was no other direct evidence, and little circumstantial evidence of Drake's participation in the crime." Id. at 584.

In April, 1981, Campbell signed an affidavit stating that he lied at Drake's trial and that Campbell, not Drake, had been responsible for the murder of the barber. The affidavit alleges that Drake and Caruth dropped Campbell off at the barber shop, then drove away. Campbell states that the barber "messed [his] hair up"; that he tried to get the barber to "fix it," but the barber refused; that the barber "got mad and hit [Campbell] with a hammer," whereupon Campbell drew a small knife belonging to Drake, took the hammer away, then beat and robbed him. The affidavit states that, afterwards, Campbell waited for Drake and Caruth to pick him up. He informed them that he was in trouble and gave Drake the victim's watch. Drake later took Campbell to Atlanta where Campbell boarded a bus to Virginia.

Campbell's affidavit asserts that he implicated Drake in the crimes because he believed Drake had informed the authorities that he could be located in Virginia. The officer who arrested Campbell in Virginia had the victim's watch in his possession. Campbell states that since he had earlier given this watch to Drake, he had reason to believe Drake led the authorities to him. Campbell's affidavit states that he testified against Drake at Drake's trial because Drake had told him after Campbell's conviction that he was glad Campbell "got the chair," and that he is recanting his earlier testimony because he "know[s] it was wrong to lie" and he desires "to be forgiven."

At the hearing on the extraordinary motion for new trial Campbell testified that the barber struck the first blow and that he beat the barber in self-defense. Campbell explained that he had taken Drake's knife from him before going to the barber shop. When the barber attacked him, Campbell stabbed him "once or twice" with the knife, but found it "didn't do no good." He threw it on the floor of the barber shop where it was later found by the police. Campbell further testified that, while his health was so poor he could "hardly walk a block without giving out," he and the barber "scuffled all the way to the back" of the barber shop. He also testified that there was "not a lot of blood" in the shop when he left, and that the barber, while conscious, was unable to move.

Drake's attorney introduced into evidence an affidavit from another attorney who had represented Drake at his habeas corpus hearing, stating that in "May or June, 1979" Campbell had informed him that Campbell had committed the crime and that Drake was not

involved. On cross-examination Campbell denied knowing the other attorney or ever making this statement to him.

(1) "The standard for granting a new trial on the basis of newly discovered evidence is well established. 'It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' *Emmett v. State,* 232 Ga. 110, 117 (205 SE2d 231) (1974); *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357) (1971); *Burge v. State,* 133 Ga. 431, 432 (66 SE 243) (1909); *Berry v. State,* 10 Ga. 511, 527 (1851); see Code Ann. § 70-204. All six requirements must be complied with to secure a new trial. *Offutt v. State,* 238 Ga. 454, 455 (233 SE2d 191) (1977); *Corn v. State,* 142 Ga. App. 798, 799 (237 SE2d 203) (1977)." *Timberlake v. State,* 246 Ga. 488, 491 (271 SE2d 792) (1980).

Pretermitting the question of whether the "newly discovered evidence" meets the first five of the above requirements, it is clear that the effect of Campbell's new testimony is to impeach the credibility of his earlier sworn statements. The law is settled that a post-trial declaration by a State's witness that his former testimony was false is not a ground for a new trial. *Stroud v. State,* 247 Ga. 395 (276 SE2d 597) (1981); *Sutton v. State,* 238 Ga. 336, 338 (232 SE2d 569) (1977); *Fowler v. State,* 187 Ga. 406 (1 SE2d 18) (1939); *Felton v. State,* 56 Ga. 84 (1876); *Richey v. State,* 132 Ga. App. 188 (207 SE2d 672) (1974); Code Ann. § 70-204.

Further, inconsistencies between the testimony Campbell now offers and other evidence presented on the trial of the case cast serious doubt on the credibility of his latest testimony. Campbell's testimony at the hearing on the extraordinary motion for new trial that he was the sole perpetrator of the crime contradicts his trial testimony that, at the time of the crime, his health was so impaired he was incapable of strenuous physical exertion. Campbell's current testimony that there was "not much blood" in the barber shop when he left the victim conflicts with evidence introduced at trial showing that "blood was smeared all over" the barber shop.

"All applications for new trial upon the ground of newly discovered evidence are addressed to the sound discretion of the trial judge, and unless it affirmatively appears that he has abused his discretion in overruling the same, his discretion will not be

controlled." *Kitchens v. State,* 228 Ga. 624, 626 (187 SE2d 268) (1972); *Carter v. State,* 246 Ga. 328 (271 SE2d 475) (1980); *Pullin v. State,* 237 Ga. 759 (229 SE2d 606) (1976). We conclude that the trial court did not abuse its discretion in denying Drake's extraordinary motion for new trial.

(2) Drake's contention that the trial court erred in denying his motion to be present at the hearing on the extraordinary motion for new trial is, likewise, without merit. "In Georgia, as in most jurisdictions, the general right of one accused of a felony to be present during the course of his trial does not extend to post-verdict procedures such as a motion for new trial, at which only questions of law, not questions of fact, are determined." *Dobbs v. State,* 245 Ga. 208 (264 SE2d 18) (1980). Contrary to Drake's position, the trial court did not abuse its discretion in denying this motion.

(3) Following the trial court's denial of the extraordinary motion for new trial, the State made a motion to delete from the record on appeal a brief and memorandum of law submitted by Drake in favor of the extraordinary motion for new trial, Campbell's affidavit recanting his trial testimony and a letter written by Drake's attorney to the district attorney of the Northern Judicial Circuit. At the hearing on the motion to correct the record, the State took the position that, since none of these documents had been offered in evidence at the hearing on the extraordinary motion for new trial, they were not properly a part of the record on appeal. The trial court agreed and ordered the documents deleted from the record. In case No. 38272 Drake appeals from that decision.

We find that, even if the trial court committed error in deleting these documents from the record, Drake has not shown how he was harmed by this error. We have studied the excluded brief and memorandum of law and find that they contain essentially the same arguments made in Drake's brief to this court in case No. 38034. A copy of Campbell's affidavit, attached to Drake's extraordinary motion for new trial, was properly made a part of the record transmitted to this court in case No. 38034; Drake cannot complain that he was harmed by the trial court's exclusion of an additional copy. Nor can we agree with Drake's contention that he was harmed by the exclusion of a letter to the district attorney outlining Drake's intention to file an extraordinary motion for new trial.

Last, Drake argues that the trial court erred in denying his oral motion to have a letter to the district attorney included in the record in case No. 38034. This letter, which we now have before us, purports to confirm a phone conversation in which the district attorney stated he would not seek an indictment against William Campbell for perjury. Drake contends that this letter indicates a lack of good faith

on the part of the State because the State is arguing that Drake's extraordinary motion for new trial should be denied since Campbell has not been convicted of perjury, while refusing to seek an indictment against Campbell for this offense. As this argument by the State is not relevant to our determination that the trial court did not err in denying the extraordinary motion for new trial, we find no harmful error in excluding this letter from the record.

*Judgments affirmed. All the Justices concur, except Hill, P. J., Smith and Weltner, JJ., who concur specially, and Clarke, J., who concurs in the judgment only.*

DECIDED FEBRUARY 9, 1982.

*Martin & Young, Mary J. Wilkes,* for appellant.

*Bryant Huff, J. Cleve Miller, District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

HILL, Presiding Justice, concurring specially.

I write to explain my inability to agree with either the majority opinion or the concurring opinion.

First, to put this case in perspective, it should be noted that here the trial judge heard the extraordinary motion for new trial on its merits. Thus, the pleading requirements of *Dick v. State,* 248 Ga. 898 (1982), post, are not involved here.

Second, after hearing Campbell's testimony offered in support of the extraordinary motion, the trial judge denied the motion. The majority opinion points out that there is serious doubt as to the credibility of Campbell's testimony at the hearing. The majority opinion then proceeds to find that the trial judge did not abuse his discretion in overruling the extraordinary motion. I agree with the majority opinion in so finding.

The specially concurring opinion contends that the majority should not have reached the questions of credibility and discretion but should have concluded when it found that " 'a new trial will not be granted if the only effect of the evidence will be to impeach the credit of the witness' and 'a post-trial declaration by a State's witness that his former testimony was false is not ground for a new trial.' " With this contention in the specially concurring opinion I cannot agree, and its inclusion in the majority opinion causes me to be unable to adopt that opinion.

It is correct that "a new trial will not be granted if the *only* effect of the evidence will be to impeach the credit of a witness" (emphasis

supplied), such as a "newly discovered" witness who says "I wouldn't believe the state's witness under oath." However, when the state's eyewitness recants his trial testimony, the effect is not "only" to impeach his credibility; it casts doubt on the proof used to convict and the correctness of the guilty verdict. Therefore, in my view (and from the majority's reliance on Campbell's credibility and the trial judge's discretion, I assume in their view) the trial judge was correct in conducting the hearing so as to hear Campbell's testimony, rather than refusing to hear the matter on the ground that "a post-trial declaration by a State's witness that his former testimony was false is not ground for a new trial."

This statement as to post-trial declarations of the state's witnesses is necessarily wrong. Assume that in a trial for rape the victim testified that the defendant entered her home, threw her on the bed, raped her, and fled as her husband returned home. The husband testified he saw the defendant fleeing from the house as he arrived. The defendant claimed consent but the jury found him guilty. After conviction and appeal, the state's key witness (the victim) says under oath that she was not raped, that she had been having an affair with the defendant, that the defendant fled when they heard her husband approaching, and that she concocted the rape story to cover up the affair she was having with the defendant. Would a court hold that "a post-trial declaration by a state's witness that her former testimony was false is not ground for a new trial"? Would a court hold that a trial judge who granted an extraordinary motion for new trial in such a case was without authority to do so? I doubt it.

In the case before us, I agree that it has not been shown that the trial judge, after hearing Campbell's testimony, abused his discretion in denying the extraordinary motion for new trial. I therefore concur in the judgment.

WELTNER, Justice, concurring specially.

The only principles necessary to resolve the issues presented by this case are those set out in the First Division of the opinion, specifically, "a new trial will not be granted if the only effect of the evidence will be to impeach the credit of the witness" and "a post-trial declaration by a State's witness that his former testimony was false is not ground for a new trial."

As Drake's contentions clearly fall within one or both of these principles, the Second and Third Divisions of the majority opinion should fall to the venerable but valid precept known as "Occam's Razor" (*essentia non sunt multiplicanda praeter necessitatem*), standing for the proposition that matters must not be multiplied

beyond necessity.

I am authorized to state that Justice Smith joins in this concurrence.