## 45341. SAMS v. THE STATE.

(366 SE2d 290)

WELTNER, Justice.

William Wayne Sams was found guilty by a jury of the malice

murder of Woodie Colley and was sentenced to life imprisonment.[1]

Late in the afternoon Sams, through his aunt, notified the sheriff's office that he had found a dead body in a public park. Members of the sheriff's department located Colley's body in the bed of his pickup truck. There was a wide, deep gash on Colley's arm and a large number of fractures to his skull. The day following, an agent of the Georgia Bureau of Investigation requested Sams to come to the sheriff's office for an interview. Sams agreed to do so, and he was picked up at his home by a deputy sheriff and driven to the sheriff's office.

During the interview the agent determined that Sams was wearing the same clothing he had worn on the previous day. Sams' shirt had a small amount of blood on it, and he complied with a request to surrender the clothing for testing. During the interview Sams told the agent that he had discovered the body in the park, and had run to his aunt's house in order that she could notify the authorities.

Approximately two weeks after this interview, the agent and other law enforcement officers went to the home of Sams' parents, with whom he lived, for the purpose of executing a search warrant. They searched Sams' room but discovered nothing of significance. When the agent asked Sams to return to the sheriff's office for another interview, he agreed, and was driven there by a deputy sheriff. The interview was preceded by advice to Sams of his *Miranda* rights. He signed a waiver of these rights. The interview started at about 5:00 p.m. By 6:00 p.m., Sams had admitted killing the victim. He was then placed under arrest. From 6:00 p.m. to 7:00 p.m., after once again being advised of his *Miranda* rights, Sams wrote in longhand his account of what had taken place.

Sams' two statements differed in minor details, but basically they relate the following: Sams was in the park when he heard Colley call out to him. Colley told Sams he needed help in retrieving an expensive pair of binoculars that had fallen into a hole. Sams agreed to help, and as he bent over the hole, Colley placed his hand on Sams' body. Sams reacted angrily and a brief scuffle took place. Sams was knocked to the ground unconscious. On awakening, Sams realized that Colley was performing sodomy upon him. He escaped, saw Colley's pickup truck, deflated one of the tires, and awaited Colley's re-

---

[1] The crime was committed on September 2, 1986, and Sams was indicted during the February term of the Superior Court of Troup County. He was found guilty and sentenced on February 25, 1987. His motion for new trial was filed on March 27, 1987, and was amended on October 16, 1987. The motion was denied on October 30, 1987. The court reporter's transcript was filed with the clerk of court on August 26, 1987, and the record on appeal was certified by the clerk on December 14, 1987. The record was docketed in this court on December 30, 1987, and the matter was submitted without argument on February 15, 1988.

turn. When Colley was attempting to change the tire, Sams approached from behind him and struck him in his head with a glass bottle.

According to Sams' statement, when the bottle struck Colley's head, Colley raised his arm and the broken bottle cut his left arm. Colley attempted to strike Sams with a tire tool. When Colley collapsed into the bed of his truck, Sams struck Colley in the head with the tire tool several times. Some of the victim's blood stained Sams' shirt. Sams then left the scene and threw the tire tool into the woods. The tire tool was later retrieved by the police.

1. A rational trier of fact could have found Sams guilty of malice murder beyond a reasonable doubt, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Sams contends that his two statements, one oral and the other in his handwriting, should have been suppressed. He argues that his arrest was illegal because it was made without probable cause, and that the confessions were the product of the illegal arrest, citing *State v. Harris*, 256 Ga. 24 (343 SE2d 483) (1986). The record does not disclose that this contention was made to the trial court at the *Jackson v. Denno* hearing, and the trial court did not address it. *Davis v. State*, 255 Ga. 588, 590-591 (340 SE2d 862) (1986).

Sams also argues that his statements were not voluntary. The trial court found the statements were given voluntarily, after Sams had been advised properly of his *Miranda* rights. The trial court's ruling is supported by the evidence adduced at the *Jackson v. Denno* hearing. "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal." *Gates v. State*, 244 Ga. 587, 590-591 (261 SE2d 349) (1979). There was no error.

3. Sams contends the district attorney was guilty of misconduct when, during closing argument, he stated to the jury that the blood found on Sams' shirt was the same type as the blood of the victim. He points out that the expert from the State Crime Lab testified that while the blood on the shirt was of human origin, she was unable to assign a type to it. There is evidence, however, that Sams stated the blood on his shirt came from Colley. Even so, there was no contemporaneous objection. "The appellant raised no objection at trial to this argument. . . . The failure to object below constitutes a waiver, and the appellant cannot now complain on appeal." *Campbell v. State*, 240 Ga. 352, 357 (240 SE2d 828) (1977).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 7, 1988.

*Mack Reynolds,* for appellant.

*William G. Hamrick, Jr., District Attorney, Peter J. Skandalakis, Monique F. Kirby, Assistant District Attorneys, Michael J. Bowers, Attorney General, Lenora Grant,* for appellee.