**Henry Arthur DRAKE,**
**Petitioner-Appellant,**

v.

**Robert O. FRANCIS,**
**Respondent-Appellee.**

No. 83–8047.

United States Court of Appeals,
Eleventh Circuit.

Feb. 29, 1984.

Opinion on Granting of Rehearing
April 5, 1984.

---

Mary J. Wilkes, Atlanta, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

ALBERT J. HENDERSON, Circuit Judge:

Henry Arthur Drake and William Campbell were convicted at separate trials in the Superior Court of Madison County, Georgia of the murder and armed robbery of C.E. Eberhart.

At approximately 9:00 p.m. on the evening of December 5, 1975, Eberhart, a local barber, was discovered lying comatose in a pool of blood on the floor of his Colbert, Georgia barber shop. Although he was rushed to the hospital, Eberhart never regained consciousness but instead lingered in a coma until his death several months later. Eberhart apparently had been injured by a stab wound and numerous blows to his head and body from a blunt object. A bloody claw hammer was discovered behind the shop and a pocket knife, distinctive in appearance and allegedly belonging to Drake, was found on the shop floor.

Although he was seventy-four years old, Eberhart was a large man and in excellent health. Blood was smeared throughout the barber shop, evidencing the struggle that had ensued from the attack. Although Eberhart had cashed $300.00 in checks earlier in the day, no cash was found on his person and his Timex watch was missing.

Earlier in the evening of Eberhart's death, a neighboring proprietor had noticed William Campbell lingering around the area. From the time of his release from prison, Campbell had been living with Drake, and his girlfriend, Mary Carruth, at Carruth's house in Madison, Georgia. The police tracked Campbell to Carruth's home and searched it after obtaining Carruth's consent. In a dresser drawer of the room formerly occupied by Campbell, the police uncovered a Timex watch later identified as belonging to Eberhart.

By the time the police arrived at Carruth's home, Campbell had already fled the state but subsequently was arrested in Virginia. Drake also was arrested. Both men were charged in Eberhart's death. Camp-

bell was tried first and was convicted of murder and armed robbery. At his trial a year later in the Superior Court of Madison County, Georgia, Drake was convicted of the same offenses. On direct appeal, the Supreme Court of Georgia affirmed. *Drake v. State,* 241 Ga. 583, 247 S.E.2d 57 (1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979). Subsequently, in July of 1979, Drake filed a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia. After a hearing on the merits, the court denied relief. The Georgia Supreme Court declined to grant Drake's application for a certificate of probable cause to appeal and the Supreme Court of the United States denied certiorari.

Two years later, Drake filed an extraordinary motion for new trial in the Madison County Superior Court alleging the discovery of new evidence that would prove his innocence. The new evidence was in the form of an affidavit by. William Campbell, the prosecution's star witness against Drake, repudiating his previous testimony implicating Drake. After a hearing, during which Campbell testified substantially to the same facts contained in his affidavit, the trial court denied the motion and the Georgia Supreme Court affirmed. *Drake v. State,* 248 Ga. 891, 287 S.E.2d 180, *cert. denied,* 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1322 (1982).

In August of 1982, Drake filed this petition for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254 in the United States District Court for the Middle District of Georgia. The petition was denied without a hearing. This appeal followed asserting seven different grounds for relief.

### I. The Newly Discovered Evidence

As stated earlier, each defendant was tried separately.[1] At Campbell's trial, the state pursued the theory that he was the actual murderer. Campbell maintained his innocence and testified instead that Drake had killed Eberhart. Nevertheless, the jury returned a verdict of guilty against Campbell and imposed the death penalty.

A year later, Drake went to trial. Claiming that it had uncovered evidence that Campbell's severe asthma and emphysema rendered him physically unable to have delivered the fatal blows, the state contended that Drake also participated in the murder of Eberhart. Testifying for the state, Campbell gave the same account of the events leading to the murder as he had related during his own trial. On the strength of this incriminating testimony, the jury convicted Drake and recommended that he be sentenced to death.

A few years after Drake's conviction, Campbell recanted his prior testimony and signed the aforementioned affidavit professing Drake's innocence in the crimes and admitting his own guilt. Drake now urges that this exonerating affidavit warrants habeas corpus relief. In evaluating this claim, the threshold question before us is whether the allegation of newly discovered evidence rises to a constitutional dimension cognizable in a federal habeas corpus action. We conclude that it does not.

The law is well settled that direct appeal is the primary vehicle for the review of state court convictions and "[t]he role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle,* —— U.S. ——, ——, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090, 1100 (1983). In order for a claim of newly discovered evidence to justify habeas review, the evidence must bear on the constitutionality of the defendant'. conviction. The Supreme Court in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), expressly stated that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not ground for relief on federal habeas corpus." *Id.* at 317, 83 S.Ct. at 759, 9 L.Ed.2d at 788.

Although some circuits appear not to have followed *Townsend's* mandate, *see Grace v. Butterworth,* 586 F.2d 878, 880 (1st

---

1. Although originally scheduled to stand trial together, Drake's trial was postponed for a year because of a successful grand jury challenge.

Cir.1978); *United States ex rel. Sostre v. Festa,* 513 F.2d 1313, 1317 (2d Cir.), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975), the Fifth Circuit Court of Appeals clearly has adhered to its dictates. The court in *Shaver v. Ellis,* 255 F.2d 509 (5th Cir.1958)[2] held that "[n]ewly discovered evidence in the form of a confession by another does not render the conviction void and subject to collateral attack by habeas corpus because it goes to the merits of the conviction, not its legality." *Id.* at 511. Thus, the role of habeas corpus is limited to consideration of challenges to the legality of a conviction; it may not be used to retry the defendant's innocence or guilt.[3] *Id.* See also *Anderson v. Maggio,* 555 F.2d 447 (5th Cir.1977) (habeas corpus relief based on a third party confession unwarranted even though no evidentiary hearing was held at either the state or federal level). Consequently, under *Townsend* and *Shaver,* the bare assertion of a third party confession is insufficient to warrant habeas relief.

## II. Pursuit of Inconsistent Theories at Trial

■ Drake contends that the prosecution pursued wholly inconsistent theories at each trial in order to procure death penalties for both defendants. He raises the novel claim that such a tack constitutes an "affront to the rudimentary demands of justice" in violation of his due process rights. Appellant's Brief at 41.

A review of the record reveals that the state's theories in the two trials were not totally inconsistent. At each trial, the state clearly demonstrated its belief that both Drake and Campbell were involved in the murder-robbery. At Campbell's trial, the prosecutor alleged that Campbell actually perpetrated the murder while Drake played a lesser role. Conversely, during Drake's trial, the district attorney relied on Campbell's physical inability to commit the murder on his own to implicate Drake in the actual murder as well. Hence, the only inconsistent theory propounded in the two trials was that Campbell's prosecutor believed Campbell was the sole murderer while in Drake's case, the district attorney urged that, due to sheer physical necessity, Drake must have participated in the attack as well. Viewed in this light, the two theories are fairly consistent and there was no due process violation.[4]

## III. Knowing Use of Perjured Testimony

■ Although under *Townsend,* newly discovered evidence alone is insufficient to

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

**3.** The appellant advances the argument that *Shaver* and its progeny are no longer valid law after *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). He insists that *Jackson* abrogated the bar against habeas corpus considerations of guilt or innocence. In actuality, there never was such a bar. Instead, there is a prohibition against consideration of evidence which bears solely on the defendant's guilt and not the constitutionality of a conviction. This requirement—that the new evidence relate to the constitutionality of the conviction—is part of the statute and remains in full force. 28 U.S.C. § 2254(a).

In comparing its decision with *Shaver,* the court in *Schneider v. Estelle,* 552 F.2d 593 (5th Cir.1977) provided a good example of when newly discovered evidence goes to the constitutionality of the conviction. In *Schneider,* if the newly discovered evidence had been proven to be true, then the appellant would have demonstrated knowing use of perjured testimony by the state, conduct which has long been held to violate due process. See *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The *Schneider* court contrasted this result with *Shaver* in which the appellant alleged no constitutional defect but merely produced evidence of another individual's confession to the crime for which he was convicted. Thus, absent any errors of constitutional magnitude in the trial, the conviction would have to be upheld.

**4.** Even had the two theories of prosecution been quite contrary, Drake's due process rights would not have been violated. Instead, if anyone was prejudiced by the prosecutorial inconsistency, it was Campbell. The evidence clearly demonstrated Campbell's severe physical limitations. Thus, as the state habeas judge correctly noted, "Campbell ... and not [Drake] ... has the superior right to complain about the tactics of the State because Mr. Campbell was convicted and sentenced to death by a prosecution that contended on another day that he was too old and sick and weak to commit the crime." Respondent's Exhibit No. 5 at 11.

raise a constitutional claim, it is clear that a due process claim may arise when the evidence indicates a knowing use of perjured testimony by the prosecution. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Skipper v. Wainwright,* 598 F.2d 425 (5th Cir.), *cert. denied,* 444 U.S. 974, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979).

Drake claims that because the state prosecuted Campbell in spite of his self-exonerating testimony, it obviously took the position that Campbell was guilty and that his accusation against Drake was false. Therefore, the use of testimony which the state previously propounded as untrue amounted to a knowing use of perjured testimony. This contention is without merit.

There is no proof that Campbell committed perjury in his original trial testimony. The mere fact that Campbell later contradicted his original account of the crimes is not an automatic indication that the previous testimony, twice given under oath, was false. The state trial judge at the hearing on Drake's extraordinary motion for new trial had the opportunity to hear Campbell's repudiation of his prior testimony. Drake's new trial motion was grounded exclusively in the allegation of newly discovered evidence. Therefore, although the state court order did not make a specific finding as to Campbell's credibility, its denial of a new trial implies that it did not believe his testimony. Where the court fails to make an express finding as to credibility but it is clear under the applicable law that the court otherwise would have granted the relief sought, then the failure to do so is "tantamount to an express finding against the credibility of the [witness]." *La Vallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). Without establishing that Campbell's original testimony was untrue, Drake fails to make out a due process claim.

## IV. *Prosecutorial Misconduct*

Capital murder trials are conducted under a bifurcated system in Georgia. If the defendant is convicted in the guilt-innocence phase, then there is a separate sentencing trial in which the jury can impose either a life sentence or the death penalty. For certain purposes on appeal, the two phases can be considered separately. Drake alleges that his sentence of death "was imposed under the influence of prejudice, passion and other arbitrary factors as a result of improper remarks made by the prosecutor in his closing argument" in the presence of the jury. Appellant's Brief at 49.

In *Hance v. Zant,* 696 F.2d 940 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), this court noted that "it is most important that the sentencing phase of the trial not be influenced by passion, prejudice or any other arbitrary factor." *Id.* at 951. Relying on *Hance,* Drake urges that he is entitled to a new sentencing hearing because the prosecutor's closing remarks unconstitutionally inflamed the passion and prejudices of the jury. In his summation, the district attorney read from the two Georgia cases, *Hawkins v. State,* 25 Ga. 207 (1857)[5] and *Eberhart v. State,* 47 Ga. 598 (1873)[6] and then drew

---

**5.** The prosecution made the following reference to *Hawkins:*

"If Your Honor please, in connection, in my urging you to submit this to the Jury, the State of Georgia, the Supreme Court of Georgia in *Hawkins versus the State* in 25 Georgia, p. 207, the Court, in upholding the murder and the death sentence in that case said this: 'Human life is sacrificed at this day throughout the land with more indifference than the life of a dog, especially if it be a good dog.' They went on to hold that Cain was the first murderer, but who is the last is known only to those who have read this morning's papers. And they said, 'If this crime goes unpunished, let our skirts at least be free from the stain of blood guiltiness.'" Record at 513.

**6.** Citing *Eberhart,* the prosecutor stated:

"If your Honor please, in *Eberhart* versus the State, 47 Georgia, page 610, the Justice of the Supreme Court of Georgia said this, in connection with a death sentence for murder: 'We have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at least about to suffer for a crime. It may be a sign of a tender heart, but it is also a sign of one not under proper regulation. Society demands that

attention to Gary Gilmore, who was executed in 1977.[7]

Prior to the prosecutor's summation at Drake's trial, the court recognized him "for any remarks it wanted to make *to the Jury.*" Record at 511 (emphasis supplied). He then proceeded to make the same type of statements that the Georgia Supreme Court condemned previously in *Hawes v. State,* 240 Ga. 327, 240 S.E.2d 833 (1977)[8] but with one distinction. Although the jury was present, the prosecution continually prefaced its remarks with the caption "if your Honor please." On direct appeal, the Georgia Supreme Court seized on these prefatory words to distinguish *Hawes* from *Drake.* The court stated that "the presence of the jury during such arguments [does] not bring the argument within the scope of *Hawes,* though it would be preferable if such argument were conducted outside of the jury's presence." *Drake v. State,* 241 Ga. 583, 587, 247 S.E.2d 57, 60 (1978). Relying on this holding of the Georgia Supreme Court, the appellee argues that these remarks of the prosecutor were directed to the court and not to the jury. Therefore, they did not constitute error as a matter of state law.

▮▮▮▮ In contrast to the Georgia Supreme Court's statement in *Drake,* the

United States District Court for the Northern District of Georgia recently concluded that comments otherwise inflammatory when made in the presence of the jury are not spared constitutional infirmity by prefatory remarks indicating that they were directed solely to the court. *Potts v. Zant,* 575 F.Supp. 374 (N.D.Ga.1983). We agree with the district court. Where statements are so prejudicial that they would invalidate a sentencing hearing when made directly to a jury, they become no more constitutionally acceptable when uttered in the jury's presence but addressed to the judge regardless of whether they comport with state procedural rules. To hold otherwise would rely on technical form over substance and would ignore the fact that the intended audience was, in reality, the jury. Being bound by *Hance* and accepting the reasoning of *Hawes* and *Potts,* we hold the prosecutor's closing remarks during the sentencing hearing to have so inflamed the passions and prejudices of the jury that Drake's death penalty must be vacated and the cause remanded for resentencing.

*V. Disproportionate and Excessive Punishment*

Drake next maintains that the imposition of the death penalty is both disproportion-

---

crime shall be punished, and criminal warned, and the false humanity that starts and shudders when the axe of justice is ready to strike is a dangerous element for the peace of society.' The Court went on to say, "We have had too much of this mercy. It is not true mercy. It only looks to the criminal, but we must insist upon mercy to society.' And if Your Honor please, the Court went on to hold, and in that case, that for criminals to go unpunished is a disgrace to our civilization, and we have reaped the fruits of it in the frequency in which the bloody deed occurs. They said that a 'stern, unbending, unflinching administration of the penal laws, without regard to position or sex, that it is the highest mark of civilization and it is also the surest mode to prevent the commission of offenses.'" Record at 513–14.

7. The precise reference to Gilmore was: "And I submit, if your Honor please, that it [capital punishment] does deter. Gary Gilmore, if your Honor please, will never kill anyone else again." Record at 515.

8. In *Hawes,* the Supreme Court of Georgia criticized the same argument made in Drake's trial, stating:

The previously cited passage from *Eberhart,* supra, did not concern the facts of that case or the reasoning as applied to those facts, but was mere obiter dicta. Therefore, no violation of Code Ann. § 24–3319 is apparent.

We do believe, however, that the remarks by the district attorney were improper. It would not have been improper for the district attorney merely to have expressed to the jury the sentiments embodied in the quote from *Eberhart,* supra. Cf. *Chenault* [*v. State,* 234 Ga. 216, 215 S.E.2d 223], supra. However, the district attorney's attribution of those sentiments to a justice of this court with the object of influencing the jury to impose the death penalty was improper and is disapproved.

*Id.* at 840.

ate and excessive in violation of the eighth and fourteenth amendments, citing as authority *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In *Enmund,* the Supreme Court held that imposition of the death penalty for felony murder was unconstitutional where the record supported no more than the inference that the defendant was the driver of the getaway car. The Court condoned imposition of a death sentence for felony murder only in cases in which the defendant killed, attempted to kill or intended to kill.

Drake argues that because the jury was instructed as to both felony murder and malice murder but returned only a general verdict of guilty, he cannot lawfully receive a death sentence under *Enmund* because the conviction may have been based merely on the jury's belief that he was an accomplice to a felony murder.

The district court held *Enmund* to be inapposite because the record here supports the inference that Drake was the actual murderer and not simply an accomplice as in *Enmund.* We believe this interpretation of *Enmund* to be correct.

The crime of felony murder may be applied in two different situations. First, it may be used to impute the crime of murder to a participant in the felony who took no part in the actual murder. This type of felony murder will be referred to as accomplice culpability. Second, a participant in the commission of the felony who lacked the requisite intent to murder but did take part in the actual killing may be convicted of murder. In this case, the intent to commit the felony is imputed to the murder so that a showing of malice becomes unnecessary. Because we are dealing here with this latter type of felony murder, the *Enmund* decision is not controlling.

■ *Enmund* disallows imposition of a death sentence on certain of those defendants convicted of murder under a pure accomplice involvement theory. Drake does not fall into that category. Instead, a review of the record reveals that the jury was presented with two conflicting stories at the trial: the state's position that Drake

was the actual murderer, and Drake's protestations of pure innocence and ignorance of the crime until after the fact. No suggestion was made by either side nor could any inference be drawn from the record that Drake played any sort of minor accomplice role paralleling that in *Enmund.* The fact of Drake's conviction makes clear that the jurors believed Drake to have participated actively in the charged crimes. Therefore, *Enmund's* prohibition against the death penalty for minor participation in the crime affords no relief for Drake.

## VI.  *Burden-Shifting Jury Instructions*

■ It is well-settled that in criminal prosecutions the state must prove every element of the crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Intent is an element of the crime of murder in Georgia. Ga.Code Ann. § 26–1101(a) (1983), *recodified as,* O.C.G.A. § 16–5–1(a), (b) (1982). At the close of the evidence and argument in Drake's original trial, the court's instructions to the jurors included the language that "a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act. . . ." Record at 484. Drake contends that under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), this charge unconstitutionally shifted the burden of proving intent from the state to him to prove the lack thereof.

The *Sandstrom* Court addressed the constitutionality of the charge, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." In assessing the validity of the questionable instructions, the Court stated that the proper test of constitutionality begins with a determination of how a reasonable jury might interpret the charge. In the case before it, the *Sandstrom* Court held that the challenged words standing alone might readily be understood to establish a conclusive presumption since there was no language indicating either that the presumption was rebuttable or that the inference was anything but mandatory. Therefore,

under *Sandstrom,* that charge, standing alone, would clearly result in unconstitutional burden shifting.

The law is also clear, however, that "a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973). The focal consideration is "not merely that the instruction is undesirable, erroneous or even 'universally condemned'", *Id.* at 146, 94 S.Ct. at 400, 38 L.Ed.2d at 373, but "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400, 38 L.Ed.2d at 374. *Accord Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). With this principle in mind, we must evaluate the constitutionality of the challenged jury instruction in light of the entire charge.

The portions of the jury charge in this case pertinent to intent read as follows:

The Defendant enters upon the trial of this case with the presumption of innocence in his favor, and that presumption remains with him throughout the trial until and unless the State carries the burden of proving the material allegations of this indictment beyond a reasonable doubt. Record at 480–81.

.   .   .   .   .

Ladies and gentlemen, I charge you that a criminal intent is a material and necessary ingredient in any criminal prosecution. I charge you that the acts of a person of sound mind and discretion are presumed to be the products of a person's will and a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, *but both of these presumptions may be rebutted.* I charge you, however, that *a person will not be presumed to act with criminal intent* but the trials (sic) of fact

may find such intent from consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act to which the accused is here prosecuted. You are the triers of the facts; therefore, it is a question of fact solely for your determination as to whether or not there was a criminal intent on the part of the Defendant, considering the facts and circumstances as disclosed by the evidence and deducting the deductions which might reasonably be drawn from these facts and circumstances. Now while a criminal intention may be proven in more than one way, the question of whether the Defendant did act with criminal intention is finally and always a question for you, the Jury, to determine. Record at 484–85. (Emphasis added).

The mandatory language of the charge in *Sandstrom* represents the unconstitutional end of the spectrum of potential jury instructions. At the other end, there is acceptable language like the charge upheld in *Hance v. Zant,* 696 F.2d 940, 946 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), that "intent . . . *may* be presumed," *id.* at 953 (emphasis original) which indicates clearly that the presumption is merely permissive. At first glance, it appears that the challenged language here, "a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act," is more akin to that used in *Sandstrom.* Unlike in *Sandstrom,* however, the charge was not left standing alone but was surrounded by curative instructions. The question is then whether the charge at Drake's trial, when viewed in its entirety, has the same permissive effect as the charge in *Hance.*

■ The Eleventh Circuit recently addressed the constitutionality of instructions virtually identical to those given at Drake's trial in *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983).[9] In *Corn,* we recognized that al-

**9.** In *Corn,* the court gave the following instructions pertinent to intent:

I charge you that the acts of a person of sound mind and discretion are presumed to

be the product of a person's will, *but this presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable conse-*

though the presumption was not phrased in the same permissive language as the charge in *Hance,* the instructions unequivocally state that the presumption is rebuttable and that individuals are presumed *not* to act with criminal intent. Due to this mitigating language, the *Corn* court concluded that the charge was "fair and balanced in both tone and content, Whatever untoward effect any part of the instruction may have had was entirely vitiated by [both] the clear statement of the state's responsibility to prove intent beyond a reasonable doubt," *id.* at 560, and the numerous explicit references to the rebuttable nature of the presumptions. *Corn* binds squarely on this decision and thus Drake's contention that the instruction is burden shifting is without merit.

We note further that a finding of intent does not play a crucial role in the outcome of this case. Because Drake was convicted both of armed robbery and murder, his murder conviction may be sustained even without a showing of intent to murder since, under the felony murder doctrine, that intent can be implied from the underlying felony. *See* Ga.Code Ann. § 26–1101(b) (1983), *recodified as,* O.C.G.A. § 16–5–1(c) (1982). *Cf. Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983) (intent to murder the focal issue at trial). In fact, it is arguable that even if the instruction was improper it was harmless error only. *See McGuinn v. Crist,* 657 F.2d 1107, 1108–09 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982) (*Sandstrom* error held harmless where intent not at issue). *Accord Lamb v. Jernigan,* 683 F.2d 1332, 1341 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983) (in certain circumstances a burden-shifting instruction on intent may be harmless error).

*VII. Statutory Aggravating Circumstances*

The eighth and fourteenth amendments prohibit the "standardless" imposition of the death penalty. *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Capital sentencing statutes must "provide a meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not. *Id.* at 427, 100 S.Ct. at 1764, 64 L.Ed.2d at 406 (*quoting Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346, 392 (1972) (White, J., concurring)). Under Georgia law, before the jury may inflict a death sentence, it must find the presence of at least one statutory aggravating circumstance.

At Drake's trial, the jury applied *inter alia,* statutory aggravating circumstance (b)(7), which provides that the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga.Code Ann. § 27–2534.1(b)(7) (1983), *recodified as,* O.C.G.A. § 17–10–30(b)(7) (1982). Because "[a] person of ordinary sensibility could fairly characterize almost any murder as 'outrageously ... vile' ", *Godfrey v. Georgia,* 446 U.S. at 428–29, 100 S.Ct. at 1765, 64 L.Ed.2d at 406, the state courts must be vigilant in insuring that the broad language of subsection (b)(7) is narrowly applied.

Relying on *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), in which the Supreme Court overturned a death sentence, Drake claims that aggravating circumstance (b)(7) was unconstitutionally overbroad and vague as applied to his case. This reliance is misplaced. In *Godfrey,* the Supreme Court simply held the subsection to have been applied over-

---

*quences of his acts.* If such person uses a weapon in a manner in which such weapon is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill. *However, this presumption may be rebutted. A person will not be presumed to act with criminal intention,* but the trier of the facts, and

that is you, the Jury, in this case, *may find such intention* upon consideration of the words, conduct, demeanor and motive, if any, and all facts and circumstances connected with the act for which the accused is prosecuted.

708 F.2d at 569 (emphasis original).

broadly after finding no support in the record for a conclusion that the murder in question was any more vile than any other homicide.

The fact situation in *Godfrey* is wholly different from the one in this case. There, the killing was instantaneous. Moreover, it was motivated by interfamilial emotional upset. Conversely, here the murder was motivated by greed. Additionally, the record indicates that Eberhart's death was anything but swift. To the contrary, it was the result of a massive bloody struggle. The victim was beaten so brutally that medical testimony disclosed "multiple places where the skull had been crushed and pushed into [the] brain." Record at 150. Photographs of the crime scene bear witness to the viciousness of the altercation that obviously took place.

The *Godfrey* Court stated that the validity of a given death sentence turns on whether subsection (b)(7) was construed in a constitutional fashion. 446 U.S. at 432, 100 S.Ct. at 1767, 64 L.Ed.2d at 409. After reviewing the record in this case and gleaning from it the hideous death inflicted by Drake, there can be no doubt that statutory aggravating circumstance (b)(7) was a proper consideration for the jury.[10]

## VIII. Jury Instructions

Finally, Drake asserts that the jury charge in the sentencing phase of the trial

---

**10.** Even assuming improper application of the subsection, however, Drake's death sentence would be valid. The jury imposed the death sentence in reliance not only on (b)(7) but also on (b)(2), which provides that the murder "was committed while the offender was engaged in the commission of another capital felony," Ga. Code Ann. § 27–2534.1(b)(2) here, armed robbery.

Recently, in *Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), the Supreme Court held that the fact that a jury relied on one unconstitutional aggravating circumstance in its sentencing decision would not invalidate the death penalty as long as the jury also relied on a valid circumstance. Therefore, even had the jury arbitrarily considered (b)(7), Drake's death sentence would be upheld on this point.

**11.** The trial court's charge to the jury stated, in pertinent part:

was not sufficiently clear to pass constitutional muster under *Goodwin v. Balkcom,* 684 F.2d 794 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). He claims that the charge, when viewed in its entirety, failed to make clear that the death penalty need not be imposed, even if a statutory aggravating circumstance were found by the jury.[11] Contrary to Drake's allegation, the charge was phrased plainly and simply such that no reasonable jury could have been confused about the options available to it. The trial judge repeated not once, but twice, that imposition of the death penalty was not mandatory, even if aggravating circumstances were present.

Accordingly, the judgment of the district court is AFFIRMED in part, REVERSED in part and REMANDED for proceedings consistent with this opinion.

JOHNSON, Circuit Judge, dissenting:

I dissent from Section VI of the majority opinion in this case that deals with the *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), issue. Drake, as is usual when this issue is presented, argues that the trial court's jury instruction on the question of intent impermissibly shifted to him the burden of proof on that question. The majority rejects this

---

In regard to the offense of murder, in the event your verdict is life imprisonment, the form of your verdict would be, "We, the Jury, recommend and fix the Defendant's punishment as follows: life imprisonment." If you find statutory aggravating circumstances beyond reasonable doubt, this should be set forth in your verdict. State what aggravating circumstances did exist; then you would add, "We, the Jury, recommend and fix the Defendant's punishment as death." *It is not mandatory that you impose the death penalty, even if you should find one or more of the aggravating circumstances do exist.* You can only impose the death penalty if you do find that one or more of the aggravating circumstances exist; but *it is not mandatory upon you to impose the death penalty.*
Record at 524–25 (emphasis added).

argument as one "without merit" and, while not specifically stating so, seems to conclude that even if the instruction did unconstitutionally shift the burden of proof, it was harmless error because proof of intent was not essential to this case. The majority concludes that intent was not essential because Drake's murder conviction might have been based on the felony murder doctrine rather than on a jury determination that Drake intentionally murdered his victim. The jury was instructed on felony murder as well as on malice murder, and it returned a general verdict. In my judgment, the majority on this issue is clearly wrong. Even if Drake's murder conviction was based on the felony murder doctrine, intent is an essential element of the underlying felony conviction, armed robbery. O.C.G.A. § 16–8–41.[1] Thus, an unconstitutional intent instruction affects a murder conviction based on the felony murder doctrine in the same manner that it affects a conviction for malice murder. Moreover, even though Drake's defense did not turn on the question of intent—he maintained an alibi defense—the state still carries the burden of proof beyond a reasonable doubt on every essential element of every charge brought against Drake, which on both the murder and armed robbery charges included the element of intent.

The challenged instruction in this case is nearly identical to the one held unconstitutional in *Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983), and to the ones held constitutional in *Tucker v. Francis,* 723 F.2d 1504 (11th Cir.1984), and in *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983). The burden-shifting instruction in this case was as follows:

> The Defendant enters upon the trial of this case with the presumption of innocence in his favor, and that presumption remains with him throughout the trial until and unless the State carries the burden of proving the material allega-

tions of this indictment beyond a reasonable doubt. Record at 480–81.

. . . . .

> Ladies and gentlemen, I charge you that a criminal intent is a material and necessary ingredient in any criminal prosecution. I charge you that the acts of a person of sound mind and discretion are presumed to be the products of a person's will and a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, *but both of these presumptions may be rebutted.* I charge you, however, that *a person will not be presumed to act with criminal intent* but the trials (sic) of fact may find such intent from consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act to which the accused is here prosecuted. You are the triers of the facts; therefore, it is a question of fact solely for your determination as to whether or not there was a criminal intent on the part of the Defendant, considering the facts and circumstances as disclosed by the evidence and deducting the deductions which might reasonably be drawn from these facts and circumstances. Now while a criminal intention may be proven in more than one way, the question of whether the Defendant did act with criminal intention is finally and always a question for you, the Jury, to determine. Record at 484–85. (Emphasis added).

In *Sandstrom,* the Supreme Court determined that, when applied to essential elements of criminal offenses, conclusive presumptions and mandatory rebuttable presumptions that a reasonable juror may interpret as requiring the defendant to present more than just some evidence to rebut, violate the Fourteenth Amendment's requirement that the state prove every element of a criminal offense beyond a reasonable doubt. 442 U.S. at 519, 523–24, 99

---

1. O.C.G.A. § 16–8–41(a) provides: "A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."

S.Ct. at 2458–59. Such presumptions violate the Constitution because they " 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime', and ... 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury." *Id.* at 523, 99 S.Ct. at 2459 (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). In a case in which intent was an element of the crime charged, the Court in *Sandstrom* rejected a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* 442 U.S. at 517, 99 S.Ct. at 2455. From this presumption, jurors reasonably could have concluded that they were to find against the defendant on the element of intent if they found proof of one element of the crime—causing death—even if insufficient proof were offered on other elements—the voluntariness and ordinary consequence of defendant's action. *Id.* at 523, 99 S.Ct. at 2459. Similarly, viewing the instruction as a mandatory rebuttable presumption, jurors reasonably could have concluded that "upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state." *Id.* at 524, 99 S.Ct. at 2459.

Moreover, *Sandstrom* concluded that the unconstitutional instruction was not cured by general instructions that the accused is presumed innocent until proven guilty and that the state has the burden of proving beyond a reasonable doubt every element of the offense charged. *Id.* at 518 n. 7, 99 S.Ct. at 2456, n. 7. These instructions were "not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." *Id.*

In *Franklin v. Francis, supra,* the Court rejected an instruction nearly identical to the one employed in this case that the majority opinion now approves. As in *Sandstrom*, the Court in *Franklin* found no cure in the trial court's additional jury charges that (1) criminal intent is not presumed and (2) the state bears the burden of proving beyond a reasonable doubt every element of the crime. 720 F.2d at 1211–12.

The majority opinion in this case virtually ignores *Franklin* and relies instead on *Corn v. Zant*, 708 F.2d 549 (11th Cir.1983), which is at least distinguishable and possibly wrong. *Corn* challenged an instruction nearly identical to the one the majority approves in this case. The panel in *Corn* approved the instruction because it "unequivocally stated" that it could be rebutted and because it contained a statement that a person is not presumed to act with criminal intent. Additionally, in *Corn* the trial court specifically stated that the prosecution bears the burden of proving intent beyond a reasonable doubt. These inconsistent instructions may have left the jury confused about where the burdens lay. As the court in *Franklin* noted, when inconsistency is apparent, it is impossible to tell which instruction the jury followed or whether they applied something in between. 720 F.2d at 1212.

Even if *Corn* is not wrong, it is distinguishable. Unlike the case now before this panel, the trial judge in *Corn,* after giving the objectionable instruction, gave an instruction specifically identifying the burdens on the element of intent. The trial court said:

> I charge you that intention is an essential element of any crime and that the burden is on the State to prove intention beyond a reasonable doubt. While the burden is not on the Defendant to disprove intention, nonetheless, if he produces some competent evidence of insanity, ... then the burden falls upon the State to prove beyond a reasonable doubt that the Defendant was sane at the time of the alleged crime....

708 F.2d at 569–70 app.

This *may* satisfy the requirement discussed in *Franklin* that the instruction explain by what quantum of evidence the defendant must rebut any presumption established by the instruction, 720 F.2d at 1212, because it specifically states the extent of the prosecution's burden on intent. Assuming that a subsequent instruction can cure the error of the earlier challenged instruction, the assumption is irrelevant in Drake's case because it appears that no such curative instruction was given to Drake's jury. Thus, in the case now before us, the majority approves the instruction simply because the presumption that it establishes is rebuttable and because it states that criminal intent cannot be presumed. The rebuttable nature of the presumption

is not enough to save it. *Sandstrom* itself refutes such an argument. The Court in *Sandstrom* specifically rejected mandatory rebuttable presumptions that require the defendant to do anything more than just *produce* "some" evidence in rebuttal. *Sandstrom, supra,* 442 U.S. at 517, 99 S.Ct. at 2455–56. It is not enough that the presumption is rebuttable; the critical question is whether the jury was made aware that the burden on the defendant, if it must be articulated that way, is a very low production burden and not a burden of persuasion. In the case now before us this was not specifically pointed out to the jury.

I dissent.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the applications for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Court en banc *with* oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.