UNITED STATES of America,
Plaintiff,

v.

Angela JOHNSON, Defendant.

No. CR01–3046–MWB.

United States District Court,
N.D. Iowa,
Central Division.

May 3, 2005.

Charles J. Williams, Patrick J. Reinert, U.S. Attorney's Office, Northern District of Iowa, Cedar Rapids, IA, Thomas Henry Miller, Des Moines, IA, for Plaintiff.

Alfred E. Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, Dean A. Stowers, Rosenberg, Stowers & Morse, Robert R. Rigg, Drake University Legal Clinic, Des Moines, IA, Patrick J. Berrigan, Watson & Dameron, LLP, Kansas City MO, for Defendant.

## ORDER REGARDING DEFENDANT'S MOTION IN LIMINE RE: EVIDENCE THAT DEFENDANT WAS A PRINCIPAL

BENNETT, Chief Judge.

This matter comes before the court pursuant to defendant Angela Johnson's May 1, 2005, Motion In Limine Re: Evidence That Defendant Was A Principal (docket no. 454). In this motion, Johnson seeks an order barring any evidence or argument that "suggests" that she was a "principal" in the intentional killings of the individuals listed in the Second Superseding Indictment, in light of the government's decision to strike allegations charging her as a "principal" in the ten capital charges against her and to proceed to trial only on an "aiding and abetting" theory as to each

count. The government resisted the defendant's motion at oral arguments on May 2, 2005. Because jury selection finished today, an expeditious ruling on the motion is necessary.

Johnson argues that, under the circumstances now presented, allowing the challenged evidence or argument would violate her due process right to a fair trial, because it would allow the government to assert patently inconsistent arguments about her involvement in the offense. She also contends that the government should not be allowed to present evidence that she was a "principal," where the government itself does not find that evidence sufficiently credible to pursue a theory that she was a "principal" in any of the killings. Finally, she contends that evidence that she acted as a "principal" is unduly prejudicial and confusing, where the government now asserts only an "aiding and abetting" theory.

The government contends that all three premises are flawed. The government contends that its theories in the *Honken* case and this case are not inconsistent, where Honken was charged as both a "principal" and "aider and abettor," and the government argued in the *Honken* case that Honken and Johnson were both participants in the killings. The government also contends that its present theory of the case is not inconsistent with the charges in the Second Superseding Indictment, where it has simply decided not to pursue one of the charged alternative theories of liability. The government next contends that the decision to drop the "principal" theory was not based on its evaluation of the credibility of its evidence supporting that theory, but on the strategic ground that the "aiding and abetting" theory would be easier to prove. Finally, the government contends that evidence that Johnson acted as a "principal" is relevant and admissible, even where the government intends to proceed only on an "aiding and abetting" theory, because such evidence tends to prove Johnson's knowledge of and involvement in the charged offenses and is inextricably intertwined with other testimony about her involvement, such that it is both relevant and not unduly prejudicial or confusing.

In support of her motion, Johnson relies primarily on the decision of the Eighth Circuit Court of Appeals in *Smith v. Groose*, 205 F.3d 1045 (8th Cir.), *cert. denied sub nom. Gammon v. Smith*, 531 U.S. 985, 121 S.Ct. 441, 148 L.Ed.2d 446 (2000). In *Smith*, the court considered "whether the Due Process Clause forbids a state from using inconsistent, irreconcilable theories to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event." *Smith*, 205 F.3d at 1049. The court concluded, first, that "[t]he due process requirement [that prosecutors do justice, not merely try to win cases] will cast into doubt a conviction obtained by a prosecutor's knowing or reckless use of false testimony." *Id.* The court then surveyed decisions in which Circuit Courts of Appeals "have recognized that inconsistent prosecutorial theories can, in certain circumstances, violate due process rights." *Id.* at 1049–50 (citing *Thompson v. Calderon*, 120 F.3d 1045, 1058–59 (9th Cir.1997) (*en banc*) (plurality holding), *vacated on other grounds*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *Drake v. Francis*, 727 F.2d 990, 994 (11th Cir.1984), *reh'g en banc sub nom. Drake v. Kemp*, 762 F.2d 1449, 1479 (Clark, J., specially concurring); and *Nichols v. Scott*, 69 F.3d 1255, 1268–72 (5th Cir.1995)).

In the case before the court in *Smith*, the court found such a due process violation, because in the trial of the defendant, the prosecutor had used a statement made by a witness on December 2, 1983, to the effect that the victims were killed only

*after* the defendant's group entered the house, but in the trial of a co-defendant, the state used the same witness's contradictory statement from November 30, 1983, to the effect that the victims were murdered *before* the defendant's group entered the house. *Id.* at 1050, 121 S.Ct. 441. Thus, "what the State claimed to be true in Smith's case it rejected in [the co-defendant's] case, and vice versa," so that the state had argued successfully in two separate cases that the murders occurred at two different times. *Id.* The court ruled that the statements were "not factually consistent, nor could Smith have been convicted of felony murder under both theories." *Id.* at 1051. The court noted, further, that this was not a case of a witness changing his testimony at trial, but a case of the prosecutor choosing to use only those statements by the witness in each defendant's trial that would lead to a conviction of that defendant. *Id.* The court also distinguished a case in which the inconsistencies in the evidence related solely to the defendant's level of involvement in a conspiracy to rob and murder a drug dealer, and that inconsistency in the testimony was presented to the jury to resolve. *Id.* (distinguishing *United States v. Albanese*, 195 F.3d 389, 390 (8th Cir.1999)).

In *Smith*, the court concluded that "this manipulation of the evidence deprived [the defendant] of due process and rendered his trial fundamentally unfair," because "[t]he State's use of factually contradictory theories ... constituted 'foul blows,' [an] error that fatally infected Smith's conviction." *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), which states that, although the prosecutor must prosecute with earnestness and vigor and "may strike hard blows, he is not at liberty to strike foul ones"). The court then summarized its holding as follows:

> We do not hold that prosecutors must present precisely the same evidence and

theories in trials for different defendants. Rather, we hold only that the use of inherently factually contradictory theories violates the principles of due process. For example, the passage of time between trials, such as the four months' time between Smith's trial and [his co-defendant's], may be a legitimate excuse for minor variations in testimony or defects in memory.... In Smith's case, however, the relevant variation was neither minor nor found in the testimony at trial.

*Smith*, 205 F.3d at 1052 (also observing that the defendant's situation "is unusual" and expressing the court's "doubt that claims such as his will often occur"). The court added, "To violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime." *Id.* The court also found that the error rendered the defendant's convictions so unreliable that he was entitled to *habeas* relief. *Id.*

■ This court does not believe that the anticipated scenarios here involve the same sort of "inherently factually contradictory theories" or "prosecutorial" inconsistencies that "exist at the core of the prosecutor's cases" as were present in *Smith*, either between Honken's case and Johnson's case, or between the indictment, which charges that Johnson is liable as both (or either) a "principal" and an "aider and abettor," and the government's trial theory, which is that Johnson was an "aider and abettor." The court reaches this conclusion for several reasons.

First, the court does not recall that the government ever argued that Honken was *only* a "principal" or "triggerman," let alone *the only* "principal," in the five killings at issue in both cases; rather, the government's theory in Honken's case was that Honken and Johnson *acted in concert*, perhaps with varying degrees of direct

involvement, in the killings of all five individuals. *See Drake,* 727 F.2d at 994 (panel decision holding that two theories were "fairly consistent" because the prosecutors had argued that both defendants played a role in the murders, and their arguments varied only with regard to the extent of each defendant's involvement); *Nichols,* 69 F.3d at 1268–72 (holding that a guilty plea by one co-defendant did not estop the government from seeking a murder conviction through trial of another defendant, given that the evidence showed that both men were present and had participated in the robbery and shooting of the victim, so that both were liable for felony murder, even if it could not be determined whose gun caused the fatal wound); *and contrast Thompson,* 120 F.3d at 1058–59 (plurality decision holding that the defendant's due process rights were violated, where the government argued in the trial of one defendant that he alone committed a murder, then argued in a subsequent trial that another defendant actually committed the same murder); *see also Smith,* 205 F.3d at 1049–50 (so characterizing the holding of the plurality in *Thompson,* the holding of the panel in *Drake,* and the holding of the court in *Nichols* ). Even if the government were to present evidence suggesting that Johnson was a "principal" in one or more of the killings, such evidence would suggest an "inconsistency" relating solely to Johnson's level of involvement in the charged killings, which could properly be presented to the jury to resolve. *Smith,* 205 F.3d at 1051 (recognizing that *Albanese,* 195 F.3d at 390, found no due process violation in such circumstances). Although the jury convicted Honken only as a "principal," the jury was *not* offered the option of finding *both* "principal" and "aider and abettor" liability. Thus, the government's theory of the involvement of Honken and Johnson in the killings in Honken's case would not be *factually* irreconcilably inconsistent with any evidence

in the present case that Johnson was also a "principal" in the killings. *See Smith,* 205 F.3d at 1049–51 (concluding that due process forbids the prosecution from pursuing inconsistent, irreconcilable theories to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event).

Second, this court has previously concluded that "[t]he conviction of one co-defendant as a principal does not necessarily foreclose the conviction of another co-defendant as a principal, for example, because of the possible permutations of the roles of co-defendants in any offense." *See* Memorandum Opinion And Order Regarding The Parties' Second Round Of ·Pretrial Motions, February 18, 2005 (Order of February 18, 2005) (docket no. 325), 87 (citing as indirect support *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), and *United States v. Hornaday,* 392 F.3d 1306, 1311 (11th Cir.2004)). Thus, the arguments and verdicts that Honken acted as a "principal" do not foreclose *as a matter of law* the possibility that Johnson also acted as a "principal" or necessarily foreclose *as a matter of law* an argument or presentation of evidence suggesting that Johnson also acted as a "principal" in some or all of the killings.

Third, there is no suggestion here, pretrial, that the government will select among differing versions. of events *from the same witness,* and present only one such version in this trial to secure a conviction of Johnson as well as Honken, which was the fundamental due process failing in *Smith. See Smith,* 205 F.3d at 1050–51 (finding selective use of inconsistent statements from the same witness in successive trials of co-defendants constituted a due process violation). In *Honken,* there were differing versions *from various witnesses, and sometimes from the same witnesses,* of both Honken's and Johnson's

involvement in the killings, but *all such versions were presented to the jury,* and the court anticipates that the same will be so in this case. It is not impermissible for the question of the credibility of these various versions to be presented to a jury, precisely because it is the jury's province to find the facts of the case. *See Smith,* 205 F.3d at 1051 (recognizing that there was no due process violation where the "inconsistency" in a witness's testimony related only to the defendant's level of involvement in the offense and the jury was left to resolve that inconsistency, citing *Albanese,* 195 F.3d at 394).

Johnson, however, makes an argument related to one presented in *Smith,* which is that the government's decision to go to trial only on an "aiding and abetting" theory shows that the government recognizes that any evidence it has suggesting that Johnson acted as a "principal" in any of the killings is not credible. Thus, she contends that the government would have to present in this case inconsistent evidence that it knows or believes is false to support a "principal" liability theory. *See id.* at 1049 ("The due process requirement will cast into doubt a conviction obtained by a prosecutor's knowing or reckless use of false testimony."). The court finds that this argument proves too much: Reasonable trial strategy to pursue one theory over another, not knowledge or belief that any "principal" liability evidence is not credible, could explain the government's choice. Indeed, the government explained that it had elected to go to the trial on the "aiding and abetting" theory, because that theory presents the most factual possibilities for conviction. Participation ranging from acting to "aid" the killings to acting as the "triggerperson" would satisfy the required factual standard for "aiding and abetting" liability, if the *mens rea* requirements are also met, thus widening the possible factual scenarios that would warrant conviction. *See, e.g., United States v.*

*Espinoza,* 349 F.3d 525, 529 (8th Cir.2003) ("To convict [a defendant] of aiding and abetting, the Government had to prove that he associated himself with the unlawful venture, that he participated in it as something he wished to bring about, that he sought by his actions to make it succeed, and that he shared the criminal intent of the principal.").

Nor does the court find that evidence that Johnson acted as a "principal" in any of the killings—should any such evidence actually be presented—would necessarily be subject to exclusion pursuant to Rule 403 of the Federal Rules of Evidence. *See* FED.R.EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by the danger of undue prejudice). Evidence that Johnson acted as a "principal" is plainly probative of her "knowledge" and her "participation" in the killings, and thus, is relevant to whether or not she is liable as an "aider and abettor." *See Espinoza,* 349 F.3d at 529 (the aider and abettor must have "associated himself with the unlawful venture" and have known and intended the outcome of the crime, as well as participating in it). Moreover, evidence that Johnson actually acted as a "principal" rather than an "aider and abettor" is not *unduly* prejudicial, even if it shows a degree of participation beyond what is required to find her guilty as an "aider and abettor," because it is evidence that is inextricably bound up with the actual criminal events, not evidence on some tangential matter. Finally, such evidence is not potentially unduly confusing, even if the jury is required to resolve apparently conflicting testimony about Johnson's level of involvement in the charged killings, because that is precisely what a jury may reasonably be expected to do. *See Albanese,* 195 F.3d at 390–91 ("inconsistent" statements of a witness about the defendant's level of involvement in the offense were properly presented to the jury).

 For these reasons, the court finds that the government cannot properly be precluded—at least not pretrial—from presenting evidence that Johnson acted as a "principal." On the other hand, the court does find that the government is now estopped *from arguing* that Johnson is guilty of any offense as a "principal" rather than an "aider and abettor" by its election to go to trial only on an "aiding and abetting" theory. However, the government acknowledged at oral arguments that it would not argue that Johnson was a "principal" in any of the offenses, and the court will simply hold the government to its word.

THEREFORE, defendant Angela Johnson's May 1, 2005, Motion In Limine Re: Evidence That Defendant Was A Principal (docket no. 454) is **granted** to the extent that the government is estopped from arguing that Johnson acted as a "principal" rather than an "aider and abettor" in the alleged killings, but the motion is **otherwise denied.**

**IT IS SO ORDERED.**